[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1385 
This case involves an armed robbery that occurred as employees of Kinney's Shoes in the Oxford Mall attempted to make their night deposit at the First National Bank in Oxford, Mississippi. For his involvement in this crime, Ronald Emery Jones was convicted of armed robbery and sentenced by the Lafayette County Circuit Court to twenty years in prison, with eleven years suspended, without eligibility for parole. On appeal, Jones raises the following issues:
A. WHETHER THE TRIAL JUDGE WAS ACTIVELY INVOLVED IN THIS CASE ON BEHALF OF THE PROSECUTION AND EXHIBITED A BIAS TOWARD THE DEFENDANT SUCH AS TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL AND OF HIS CONSTITUTIONAL RIGHTS?
B. WHETHER LAWRENCE SWINDOL WAS INVOLVED IN THIS ALLEGED ARMED ROBBERY SO THAT THERE WAS NO ARMED ROBBERY ACCORDING TO THE STATUTE?
C. WHETHER THE PROSECUTING ATTORNEY COMMITTED ERROR BY COMMENTING ON THE FAILURE OF THE DEFENDANT TO TESTIFY?
D. WHETHER THE COURT ERRED IN ITS FAILURE TO GRANT A CONTINUANCE AS REQUESTED BY THE DEFENSE COUNSEL WHEN THE STATE FAILED TO FURNISH THE RECORDED STATEMENT OF WITNESS AARON THOMAS UNTIL THE DAY BEFORE TRIAL?
E. WHETHER THE SENTENCE PRONOUNCED BY THE COURT ON RONALD JONES WAS TOO SEVERE AND HARSH AND AMOUNTED TO CRUEL AND UNUSUAL PUNISHMENT?
This Court finds Jones' appeal to be meritless and affirms the judgment of the trial court.
 I. FACTS
At approximately 10:00 p.m., March 30, 1991, three employees of Kinney's Shoes in the Oxford Mall went to the First National *Page 1386 
Bank in Oxford to make their nightly deposit. An armed assailant took the deposit, which amounted to over $2,000.
Three men entered guilty pleas pursuant to plea agreements in this case. Kinney's store manager, Johnny Chinn, pled guilty to conspiracy to commit armed robbery. In exchange for the plea, Chinn received a sentence of five years in prison, and he agreed to testify against Jones. Michael Vincent, who actually held the gun and took the money, pled guilty to robbery with a weapon. He was sentenced to serve three years without parole, and he agreed to testify against Ronald Jones. Aaron Thomas, the driver of the getaway car, pled guilty to accessory after the fact of the crime of armed robbery. He agreed to testify truthfully and cooperate with the State in the prosecution of the armed robbery cases, in exchange for a sentence of five years of supervised probation.
The record reflects that all three of the convicted accomplices (Vincent, Chinn, and Thomas) knew Jones and that Jones had approached each of them and asked if they would like to participate in the planned robbery. In addition, Jones had previously managed a similar Kinney's, where he had worked with two of the accomplices.
On the night of the incident, Jones rode from Memphis, Tennessee to Oxford. He traveled with the assailant (Vincent) and the driver of the getaway car (Thomas) in the assailant's white Chevrolet Chevette. Once in Oxford, Jones went to the Kinney's Shoes and asked the Store Manager (Chinn) when he was getting off work, who usually carried the bank bag, how much business Kinney's had done that day, and where the bank was located.
After closing that night, the Kinney's manager, assistant manager, and another employee left to take the deposit to the bank. The assistant manager and the other employee noticed an occupied white Chevette in the mall parking lot; the car had "five-point" rims and an unusual antenna. Upon arrival at the bank, the employees were approached by an armed man who took the money bag from the assistant manager. Afterwards, the assistant manager and the other employee saw the white Chevette leave the scene.
The Kinney's employees then called the police. Shortly thereafter, the white Chevette was apprehended by the Mississippi Highway Patrol, between Oxford and Batesville. Aaron Thomas had been driving, Michael Vincent was in the passenger's seat, and Ronald Jones was in the rear seat on the passenger's side. The money was later found behind the assailant (Vincent's) zipper. A gun and two holsters were retrieved from the car. The driver (Thomas) testified that there had been two guns in the car that night and that they both belonged to him. Neither a gun nor money was found on Appellant Jones' person. The assistant manager and the other Kinney's employee later identified the Chevette as the vehicle they had seen at the mall and the bank.
 II. LEGAL ANALYSIS
A. WHETHER THE TRIAL JUDGE WAS ACTIVELY INVOLVED IN THIS CASE ON BEHALF OF THE PROSECUTION AND EXHIBITED A BIAS TOWARD THE DEFENDANT SUCH AS TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL AND OF HIS CONSTITUTIONAL RIGHTS?
Jones contends that the trial judge demonstrated bias in the following ways: (1) that the trial judge improperly interjected himself during the testimony of Aaron Thomas; (2) that the trial judge incorrectly ruled on objections; (3) that the trial judge allowed Chinn and Vincent to remain in the courtroom during closing arguments. Jones also contends that the trial judge was biased in his sentencing; however, the sentence (as discussed later in this opinion) was within the statutory guidelines and did not demonstrate bias.
 1. Testimony of Aaron Thomas
Prior to trial, Thomas, the driver of the getaway car, gave two statements to the police. One was apparently given the night *Page 1387 
of the robbery, March 30, 1991; the other was given after his plea bargain on April 7, 1992. At trial, Thomas could not remember several of the comments he made in his April 7, 1992 statement.
During the course of direct examination, the defense counsel objected to the prosecution's leading of Thomas. In response, the prosecutor stated that the witness was "obviously a hostile witness." The trial judge then excused the jury and reminded the witness of the terms of his plea bargain.[1]
Jones now contends that the trial judge improperly interjected himself into the proceedings by making these comments to Thomas. Basically, Jones' argument is that it was apparent to the jury that the judge "straightened Thomas out" while they were gone. Jones contends that, after the jury came back in, Thomas "went right along with his previous statement of April 7, 1992. Of course, this was obvious to the jury."
This Court has "made clear that [it] will not hesitate to reverse where the trial judge displays partiality, becomes an advocate, or, in any significant way, conveys to the jury the impression that he has sided with the prosecution." Layne v.State, 542 So.2d 237, 242 (Miss. 1989). Thus, the question in the case at hand is whether the trial judge demonstrated partiality in favor of the prosecution.
In support of his argument, Jones cites West v. State,519 So.2d 418 (Miss. 1988) and Nichols v. Munn, 566 So.2d 1132 (Miss. 1990).[2] Clearly, these cases are distinguishable from the case sub judice. Both West and Nichols involved statements made in the presence of the jury. There are no such statements here. The Court's discussion with Thomas took place outside of the jury's hearing; therefore, the risk of the judge unduly influencing the jury in this case would be "nonexistent."See Foster v. State, 639 So.2d 1263, 1291 (Miss. 1994).
 2. The rulings on the objections
Jones further contends that the trial judge demonstrated bias in favor of the prosecution by sustaining the prosecution's objections to the form of some of the defense counsel's questions. Jones' argument appears to be that the judge's rulings on these objections demonstrated partiality toward the prosecution. However, the record reflects that the judge did not rule that the defense counsel could not ask the questions. He simply ruled that the questions would have to be rephrased (apparently because they called for legal conclusions). Thus, there is nothing in the disputed rulings which would indicate bias on the part of the judge.
 3. The presence of Chinn and Vincent in the courtroom
Jones also argues that the trial judge erred by allowing the convicted accomplices, Chinn and Vincent, to remain in the courtroom *Page 1388 
during closing arguments. The record reflects that defense counsel objected to their presence and pointed out that the inmates were shackled and that they were identified as inmates by the emblems on the back of their shirts. It appears that the trial judge addressed the concerns of the defense counsel by having the inmates un-shackled. The judge indicated that they were in civilian clothes, and he made Vincent and Chinn remain seated so that the M.D.O.C. emblem on their backs did not show. Thus, there is no merit in Jones' argument on this point, particularly when Chinn and Vincent had testified that they had pled guilty and that they were serving prison sentences in connection with this crime.
B. WHETHER LAWRENCE SWINDOL WAS INVOLVED IN THIS ALLEGED ARMED ROBBERY SO THAT THERE WAS NO ARMED ROBBERY ACCORDING TO THE STATUTE?
The Mississippi statute on armed robbery provides as follows:
 Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment of life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
Miss. Code Ann. § 97-3-79 (1972).
Thus, the crime of armed robbery is "the felonious taking of the property of another from that person and against her will by violence or by putting such person in fear of immediate injury."Malone v. State, 486 So.2d 360, 363 (Miss. 1986), citing Miss. Code Ann. § 97-3-79 (Supp. 1985).
Jones was indicted for the armed robbery of the assistant store manager, Lawrence Swindol. He asserts that the evidence proved Swindol's involvement in the crime, and that, therefore, because Swindol was "in on" the crime, he could not have been in "fear of immediate injury." Jones' argument that the State failed to prove an element of the crime (that Swindol was "in fear of immediate injury") is basically a challenge to the sufficiency of the evidence.
The standard of review for sufficiency of the evidence is well-established:
 [T]he evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Jones'] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
McClain v. State, 625 So.2d 774, 778 (Miss. 1993) (citations omitted).
Jones asserts that (the assailant) Vincent's pre-trial statements to the police demonstrate that Swindol was involved in the crime. In that statement, Vincent indicated that the money was to be split five ways and that the store manager, Chinn, had to pay someone, but Vincent did not know the identity of that person. Vincent did not name Swindol, the assistant store manager, as the fifth person. Furthermore, at trial, Vincent denied that the money was to be split five ways and stated that the money was to be split four ways — among Chinn, Jones, Vincent, and Thomas. More importantly, Chinn (the person Vincent said was going to share the money with a fifth person) testified that he did not know whether Swindol was involved. Furthermore, Thomas also testified that the money was to be split among those four people.
Thus, none of the three convicted accomplices testified that Swindol was an accomplice. *Page 1389 
Vincent's previous statement did not identify Swindol as the supposed "fifth" person. Moreover, Vincent and Thomas indicated that the money was to be split among Chinn, Jones, Vincent, and Thomas.
Vincent also testified that, during the robbery, Swindol did not look scared and that he knew what was happening. Vincent stated that Swindol gave him the money before he finished speaking. Furthermore, Vincent commented in his pre-trial statement that Swindol was moving slowly, as if stalling. Jones also argues that Swindol's appropriate response, upon driving up and seeing the other employee with his hands in the air should have been to drive away from the bank. On the other hand, there is testimony that Swindol was shocked, scared, and nervous and later became hysterical. Furthermore, even the employee who had his hands in the air testified that he thought the robbery was a prank at first.
Moreover, Officer Waller testified that he "bore down" on Swindol and that he was never able to find any evidence that Swindol was involved in the crime. Of course, Jones contends that Officer Waller intentionally ignored Swindol's involvement in order to make the armed robbery charges "stick." However, Waller was a veteran police officer, and the jury was in the best position to judge his credibility. In addition, Swindol took the stand; the defendant could have pursued his theory of Swindol's involvement. The jury assessed Swindol's credibility also.
Thus, considering the evidence in the light most favorable to the State; accepting the credible evidence consistent with Jones' guilt as true; giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from the evidence; and allowing the jury to resolve the matters of credibility, reasonable and fair-minded jurors could have found Jones guilty. Therefore, Jones' argument on this point is without merit.
C. WHETHER THE PROSECUTING ATTORNEY COMMITTED ERROR BY COMMENTING ON THE FAILURE OF THE DEFENDANT TO TESTIFY?
During defense counsel's closing argument, the following exchange occurred:
 I'm asking you to send Ronald Jones somewhere too. Ronald Jones is a good man. He's a family man.
 BY MR. LITTLE: Object to that, Your Honor, not in the record.
 BY THE COURT: Sustained.
 BY MR. BELL: Your Honor, I can present my argument.
 BY THE COURT: You may continue.
 BY MR. BELL: Thank you. I ask you to send him back home to his family and back to his job tomorrow, supporting his family.
 BY MR. LITTLE: Object to that, Your Honor.
 BY THE COURT: Overruled.
Thereafter, the following transpired during the State's closing arguments:
 Let's talk about some things. [Patrolman] David Shaw stopped the car and we have been over this but there weren't but three people in that car, the defendant is one of the three people. There is no denying that. Did they ask David Shaw on cross examination this question, did Ronald Emory Jones go up to you David Shaw and throw his arm around you and say thank you for rescuing from this armed robbery. The money is in Vincent's pants. The gun is in the car under the seat, please get it all I'm scared. Is that what David Shaw told you? Did they even ask him. No. No. Why didn't they ask him. They knew the answer that's why they didn't ask him.
 * * * * * *
 He thinks he is smarter than you are. I can tell by watching him the last couple of days.
 BY MR. BELL: Your Honor, that's an improper statement.
 BY THE COURT: Sustained. Jury disregard it.
 BY Mr. LITTLE: I think it's proper, Your Honor, this is argument. *Page 1390 
 BY THE COURT: I have ruled.
 * * * * * *
 BY MR. LITTLE: You saw him snicker when I started fighting with Aaron Thomas . . . My apology is going to be if he walks out of here and goes where ever he goes which you didn't hear any proof about any of where he is going when he gets out of here.
 BY MR. BELL: We object to that. May we approach.
 (BENCH CONFERENCE, NO RECORD).
 BY THE COURT: Your objection, Mr. Bell, on the obvious ground in my opinion is not well taken. I do instruct the jury to disregard the last statement of Mr. Little.
After the jury retired to deliberate, the trial judge explained that he did not think the prosecution had improperly commented on the defendant's failure to testify, but that he had instructed the jury to disregard the comment out of "an abundance of caution."
Jones contends that the above statements were improper comments on his decision not to testify. The Mississippi and the U.S. Constitutions provide that no person may be compelled to take the witness stand against himself. See Fifth Amendment to the U.S. Constitution; Article III, § 26 of the Mississippi Constitution. In order to protect this right, prosecutors are prohibited from making direct comments on the defendant's failure to testify; they are also precluded from referring to the defendant's failure to testify "by innuendo and insinuation." Wilson v. State,433 So.2d 1142, 1146 (Miss. 1983).[3]
"Balanced against this [constitutional] interest however, is the rule that attorneys are to be given wide latitude in making their closing arguments. Thus, although a direct reference to the defendant's failure to testify is strictly prohibited, all other statements must necessarily be looked at on a case by case basis." Jimpson v. State, 532 So.2d 985, 991 (Miss. 1988), citing Johnson v. State, 477 So.2d 196, 209 (Miss. 1985);Ladner v. State, 584 So.2d 743, 754 (Miss. 1991); Shook v.State, 552 So.2d 841, 851 (Miss. 1989). "There is a difference, however, between a comment on the defendant's failure to testify and a comment on the failure to put on a successful defense."Jimpson, 532 So.2d at 991 [emphasis in original]. "Moreover, the State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to a defendant's failure to testify `by innuendo and insinuation.'" Shook, 552 So.2d at 851; Alexander v. State, 610 So.2d 320, 339-40 (Miss. 1992).
What constitutes an improper comment on the defendant's failure to testify is "to be determined from the facts and circumstances of each case. The question here is whether the comment of the prosecutor can reasonably be construed as a comment upon the failure of [the accused] to take the stand." Ladner v. State,584 So.2d 743, 754 (Miss. 1991) (citations omitted); Alexander,
610 So.2d at 339; Griffin v. State, 557 So.2d 542, 552 (Miss. 1990).
In the case at hand, none of the prosecutor's statements were direct comments on Jones' failure to testify. Thus, the particular circumstances in this case must be considered. The prosecution's comment about what Jones did or did not say to the highway patrolman was a valid comment on Jones' actions the night of the robbery; it did not deal with Jones' failure to take the stand. Moreover, there was no objection to this argument. The prosecution's objection to the defense counsel's statement in closing argument about Jones being a family man was a legitimate objection to the defense *Page 1391 
counsel making statements that were not based on evidence.
The most troubling comment is the statement to the effect that the jury "did not hear any proof" about where Jones was going if the jury did not convict him. However, it appears that the prosecution was pointing out the lack of evidence that Jones was a family man and that he needed to be sent back to his family. Granted, the defense cannot "open the door" for the prosecution to trample his client's constitutional rights. However, the prosecution's remark in this case does appear to be in response to the defense attorney's invitation to the jury to send Jones home to his family, when, in fact, there had been no testimony regarding Jones' family.
The defense could have easily brought testimony to the effect that Jones was a family man and a good provider — without putting Jones on the stand. Indeed, this is what they did during the sentencing hearing through the testimony of Jones' grandmother, aunt, uncle, and wife. Therefore, the prosecution's comment in this case seems to be a comment on the lack of a defense generally and not the defendant's failure to testify specifically.
Thus, a consideration of the facts and circumstances of this case tends to show that the prosecution did not improperly comment on Jones' failure to testify. Jones also argues that, based on the record excerpts quoted above, the prosecution made improper remarks intended to inflame the jury. Specifically, Jones points to the prosecutor's comment that the defendant "thinks he is smarter" than the jury.
In support of this argument, Jones cites Griffin v. State,557 So.2d 542, 553 (Miss. 1990), which states that:
 Rule 5.01 and Rule 5.12 of the Uniform Criminal Rules of Circuit Court Practice require that the attorneys for the state, as well as defense counsel, conduct themselves with dignity and decorum, treating the court, counsel, witnesses, and even the defendant, with professional respect. The prosecuting attorneys did not so conduct themselves in the trial of this case. The trial court is reminded that the rules require that no conduct interfering with or obstructing the administration of justice shall be tolerated. When prosecutorial misconduct in the courtroom requires reversal of a case, that rule has been violated. Attorneys are required to "act in a fit, dignified, and courteous manner which will not degrade or interfere with the administration of justice." There is no need for an announcement by the district attorney that he intends to "stomp" his feet and "holler."
There was no such "announcement" in the case at hand. Moreover, the parties are granted wide latitude on closing arguments.Jimpson v. State, 532 So.2d 985, 991 (Miss. 1988), citingJohnson v. State, 477 So.2d 196, 209 (Miss. 1985). Furthermore, there is no evidence that the prosecutor in this case failed to "act in a fit, dignified, and courteous manner." Thus, Jones argument on this point is without merit.
D. WHETHER THE COURT ERRED IN ITS FAILURE TO GRANT A CONTINUANCE AS REQUESTED BY THE DEFENSE COUNSEL WHEN THE STATE FAILED TO FURNISH THE RECORDED STATEMENT OF WITNESS AARON THOMAS UNTIL THE DAY BEFORE TRIAL?
As stated earlier, Thomas, the driver of the getaway car, gave two statements to the police, one the night of the crime, and one on April 7, 1992, after his plea bargain. Defense counsel asserted at trial that he did not receive the second Thomas statement until the evening before trial. After the voir dire and jury selection were conducted in the morning, the judge heard the defense motion for a continuance. The trial judge gave the defense until the next morning to determine whether he needed more time. The next morning, the defense counsel stated that there were two issues in the statement that he needed more time to investigate. The State offered at that time to excise any "surprise" *Page 1392 
evidence from the statement. Defense counsel also indicated that he might need to subpoena witnesses from Memphis to refute those statements. The two problematic comments in the statement were (1) Thomas stated he had not met Chinn before, and (2) Thomas stated that there were two guns in the car the night of the robbery. The prosecutor offered to refrain from soliciting those matters from the witnesses. The trial judge denied the motion for the continuance and stated that these two issues were "collateral issues." After which, the judge indicated that, if necessary, he would give defense counsel "ample time" to confer with Thomas.
The procedures to be followed when this type of discovery violation occurs are well-defined. In cases where the prosecution, during the course of the trial, attempts to introduce evidence that has not been timely disclosed:
 1. Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
 2. If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
 3. If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
Frierson, 606 So.2d at 607, citing Kelly v. State,553 So.2d 517, 520 (Miss. 1989), (quoting Cole, 525 So.2d at 369). Seealso Miss. Unif.Cir. and Co.Ct.R. 9.04(I).
It does not appear that these guidelines were followed in this case.[4] However, even if the trial judge did err, it was harmless error. Practically speaking, Jones does not appear to have been prejudiced in any way by the trial judge's ruling. The prosecution did question Thomas about the two guns; Thomas testified that there were two guns in the car and that they belonged to him. The officers testified that they found two holsters and one gun. It is difficult to imagine any scenario in which Thomas' testimony on this issue would prejudice the defendant.
On the other hand, if Thomas had testified at trial that he did not know Chinn, then Jones may have been prejudiced. However, Thomas made no such statement. If he had, the prosecution's contention that "the common thread" among all the accomplices was Jones and that Jones was the mastermind might have worked to prejudice Jones. As stated earlier, Thomas did not testify to that effect. In fact, his testimony was that he at least knew of Chinn, because he knew that Chinn gave Jones some money when Thomas and Jones were operating a janitorial service. Moreover, Chinn testified that he had known Thomas for three or four years before the robbery, although he did not know him well. Thus, the late discovery of Thomas' statement that he did not know Chinn would not have prejudiced Jones, because it did not come out at trial.
Even though the guidelines for discovery violations were not followed, it was harmless error. The purpose of these guidelines is to avoid ambush or unfair surprise to either party at trial.Id., citing Robinson v. State, 508 So.2d 1067, 1070 (Miss. 1987); Holland, 587 So.2d at 866-67. Jones has not shown that this late discovery worked to his detriment. Moreover, M.R.E. 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence *Page 1393 
unless a substantial right of the party is affected." Jones has neither contended nor demonstrated that the evidence introduced from Thomas' second statement affected a substantial right.
E. WHETHER THE SENTENCE PRONOUNCED BY THE COURT ON RONALD JONES WAS TOO SEVERE, HARSH, AND AMOUNTED TO CRUEL AND UNUSUAL PUNISHMENT?
A sentencing hearing was held. Thereafter, the trial judge sentenced Jones to twenty years in prison, with eleven years suspended, without parole. That is, the trial judge ordered that Jones must serve nine years. Jones argues that the other accomplices all received lesser sentences.[5] He further contends that the trial judge:
 completed [sic] ignored the fact that Ronald Jones who is 34 years of age, had no previous record, had never been in trouble before. He ignored the fact that Ronald Jones has been married for 10 years, has a son three years of age; that the has been a good husband and father and yet gave him a sentence as though he were a hardened criminal.
This argument is without merit. "So long as the sentence imposed is within the statutory limits, sentencing is generally a matter of trial court discretion." Green v. State,631 So.2d 167, 176 (Miss. 1994), citing Wallace v. State, 607 So.2d 1184, 1188 (Miss. 1992). This Court "will not review the sentence, if it is within the limits prescribed by statute." Reynolds v.State, 585 So.2d 753, 756 (Miss. 1991), citing Reed v. State,536 So.2d 1336, 1339 (Miss. 1988); Boyington v. State,389 So.2d 485 (Miss. 1980).
The statute on armed robbery provides that the defendant can be sentenced to life by the jury. Where the jury does not sentence the defendant to life (which is what happened in the case subjudice) the judge "shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years." Miss. Code Ann. § 97-3-79 (1972) (emphasis added). Thus, the judge's sentence of twenty years with eleven years suspended (or nine years without parole) was well with in the statutory guidelines. See Ware v. State, 410 So.2d 1330, 1332 (Miss. 1982) (sentence of forty years for twenty-six-year-old defendant convicted of armed robbery was within statutory guidelines). Therefore, Jones' argument on this point is without merit.
The issues raised by Jones on appeal are not meritorious. Therefore, the judgment of the trial court is affirmed.
CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY YEARS INTHE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHELEVEN YEARS SUSPENDED AND NINE YEARS TO SERVE AFFIRMED.APPELLANT SHALL NOT BE ELIGIBLE FOR PAROLE.
DAN M. LEE, P.J., PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
SULLIVAN, J., dissents with separate written opinion joined by HAWKINS, C.J., and McRAE, J.
[1] BY THE COURT: Do you have that court file on State v.Aaron Thomas. Mr. Thomas, it's my duty as Judge to protect the rights of everyone involved in cases and back in April you offered a plea of guilty to accessory after the fact of the crime of armed robbery and placed on supervised probation according to your plea agreement; and part of the plea agreement was to truthfully testify and cooperate with the State in prosecution of cases involving armed robbery. Now, what I'm doing here today is to inform you of that if you have got any questions and doing it in your behalf because if the State is going to try to declare you a hostile witness and lead you through testimony that you allegedly have given before to the State or statements that you allegedly give I don't want to come in and try to revoke this agreement; do you understand?
A. Yes, sir.
Q. Now do you understand the implications of what I'm telling you?
A. Yes, sir.
BY THE COURT: Mr. Bell, anything further outside the presence of the jury.
BY MR. BELL: No, sir.
BY THE COURT: I don't do this as any threat or any other reason and I have stated that I thought I remembered circumstances upon which proceedings were deferred in your case and I just wanted to inform you of that. Are you ready to continue, Mr. Little.
[2] There is no such case as Nichols v. Mun, 566 So.2d 1132 (Miss. 1990); however, this Court will assume that Jones is referring to Nichols v. Munn, 565 So.2d 1132 (Miss. 1990).
[3] "[O]nce such improper comments are made the defendant is entitled to a mistrial. The error is incurable." Livingston v.State, 525 So.2d 1300, 1307 (Miss. 1988); Butler v. State,608 So.2d 314, 318 (Miss. 1992). Thus, if the prosecutor in the case at hand made an improper comment on the defendant's failure to take the stand, then the instruction to the jury to disregard the comment would not have been sufficient to correct the impropriety.
[4] The trial judge did give defense counsel time to examine Thomas' statement. Thereafter, defense counsel did move for a continuance. The prosecutor did express his willingness to proceed without using the statements which the defense found objectionable. All would have been well if the judge had redacted the disputed statements and proceeded. Instead, the judge ruled that the disputed statements were about "collateral issues" and denied the motion for a continuance. However, the trial judge did offer the defense counsel more time to confer with Thomas.
[5] Thomas, the driver of the getaway car, received a sentence of five years of supervised probation. Vincent, the person who actually held the gun and took the money, was sentenced to three years in prison, without parole. Chinn, the store manager, was sentenced to five years in prison. However, these were plea agreements.