749 So.2d 300 (1999)
David SHIPP, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01241-COA.
Court of Appeals of Mississippi.
September 21, 1999.
*301 Jack R. Jones, III, Southaven, Attorney for Appellant.
Office of the Attorney General by Pat Flynn, Michael C. Moore, Attorneys for Appellee.
BEFORE KING, P.J., IRVING, AND LEE, JJ.
KING, P.J., for the Court:
¶ 1. A Desoto County grand jury indicted appellant David Shipp, charging that he did "wilfully, unlawfully and feloniously, knowingly and intentionally sell, barter, transfer, distribute or dispense a controlled substance, to-wit: Cocaine." Pursuant to a jury trial, Shipp was convicted. On appeal, Shipp presents two assignments of error, which we quote verbatim from his brief:
1. THAT THE PROSECUTOR INTERJECTED PREJUDICIAL MATTER CONCERNING THE POSSIBILITY THAT CRACK COCAINE WAS MORE ADDICTIVE THAN REGULAR COCAINE.
2. THAT THE PROSECUTOR IMPROPERLY COMMENTED TO THE JURY DURING CLOSING ARGUMENT IN A MANNER THAT COMMENTED ON THE RIGHT OF THE APPELLANT TO NOT TESTIFY.
Finding that Shipp's assertions of error lack merit, we affirm.

I. FACTS
¶ 2. On March 11, 1997, Officer Gary Henry drove to the West End area of Hernando, Mississippi. As Henry traveled along Southern Street. He saw an individual and held up two fingers. That individual, appellant David Shipp, approached the vehicle and asked Henry, an undercover narcotics agent, what he needed. Officer Henry stated that he needed a couple of rocks. The individual explained that he only had one, which he sold to Officer Henry for $20. Officer Henry took the "rock," along with a videotape of the transaction, to the Metro Narcotics Unit Office. Although Shipp was not immediately arrested, he was identified as the individual in the videotape who sold the crack cocaine to Officer Henry.

II. TRIAL
¶ 3. The State's first witness, Officer Gary Henry, described the undercover and surveillance work related to apprehending narcotics offenders. On March 11, 1997, Officer Henry was working in an undercover capacity for the Desoto County Metro Narcotics Unit. According to normal operating procedure, he met surveillance officers at the unit office and was issued state funds, a tape recorder, a body wire and a video recorder. He drove an undercover vehicle from the office to the West End and recorded on videotape the sale for which Shipp was indicted. Officer Henry identified the videotape, and it was introduced into evidence.
¶ 4. Officer Henry recalled traveling on Southern Street and holding up his fingers as he saw an individual to his right. When *302 that individual approached the vehicle, Officer Henry said that he needed "a couple of rocks." The individual sold Officer Henry one rock for $20 of the official state funds that Officer Henry was carrying. Officer Henry said that he took the rock and released the rock and the videotape to Agent Carmon's custody at the office.
¶ 5. As the jury watched the videotape, Officer Henry narrated the events depicted. The State then asked appellant Shipp to stand and allow the jury to see both profiles and a frontal view. The jury was allowed to view the tape as Shipp stood near the television. Officer Henry identified Shipp as the person on the tape from whom he purchased a rock of cocaine. After Officer Henry identified the bag with the rock cocaine in it, the rock was introduced into evidence. On cross-examination, Officer Henry acknowledged that he made another purchase that day before he returned to the office. He explained that he kept the two purchases separate by putting the first bag on the car seat and the second bag in his pocket.
¶ 6. The second witness, Officer Gary Carmon, testified that he had known Shipp for about eight years and identified the defendant as Shipp. He recalled that he took custody of the videotape on March 11, 1997. Officer Carmon also described the conversation on the audiotape of the subject transaction. He explained that Officer Henry gave him the evidence at the Metro Narcotics office and differentiated the bags from the first and second purchase. Officer Carmon noted that Shipp was not immediately arrested, so the officers did not confiscate the specific $20 bill from him and compare the serial number to the one that Officer Henry paid for the cocaine.
¶ 7. Next, Officer Gary Smith of the Desoto County Metro Narcotics Unit identified the submission form that accompanied the cocaine when he took it to the Tupelo Crime Laboratory, and the form was admitted into evidence. He explained that the bags were marked for identification.
¶ 8. The State called Edwina Ard, the director and analyst at the City of Tupelo Police Department and the crime laboratory. After Ard detailed her education and background, she identified the crack cocaine which she had tested for this case. The defense objected to the State's question of whether crack is more or less addictive than the powder form of cocaine. While the defense did not ask the court to strike the question from the record, and although Ard stated no answer, the defense moved for a mistrial. The court overruled the motion, and the exhibit was admitted into evidence despite the defense's suggestion that the chain of custody was insufficiently established.
¶ 9. The State rested. Outside the presence of the jury, the judge informed Shipp that his prior offense increased the maximum sentence from thirty years to sixty years in this case. The defense moved for a directed verdict. The motion was denied, and the court reviewed Shipp's right to testify or refrain from testifying. The defense rested, and the court considered proposed jury instructions. The parties offered closing arguments.
¶ 10. During the State's response to Shipp's closing arguments, the defense objected to the State's rebuttal as to defenses that defendants could offer. The court overruled the objection. The State continued to offer examples of defenses that imply reasonable doubt by suggesting that prosecutors or law enforcement officers failed to use every means possible to prosecute a defendant. The prosecutor explained that the issue for the jury was whether Shipp was the person in the videotape rather than whether the State presented a perfect case.
¶ 11. The jury returned a verdict finding Shipp guilty as charged.
¶ 12. Shipp's hearing for post trial motions and sentencing occurred October 3, 1997. Both issues presented on appeal *303 were included in the motion for new trial which the court denied. Although Shipp's mother testified that Shipp has never been violent, the State emphasized that Shipp was caught selling cocaine within two months after he was released from prison on a previous drug conviction. The court imposed a sentence of thirty years in the custody of the Mississippi Department of Corrections, twenty-five years suspended and five years to serve, to run consecutively to the time Shipp was serving due to revocation of sentence suspension for a previous violation.

III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES

A. Shipp's first issue:

Did the prosecutor interject prejudicial matter by asking whether crack cocaine was more addictive than regular cocaine?

1. Standard of Review
¶ 13. "This Court has repeatedly held that the granting of a motion for a mistrial is within the sound discretion of the trial judge." Ragin v. State, 724 So.2d 901(¶ 13) (Miss.1998)( citing Hoops v. State, 681 So.2d 521, 528 (Miss.1996)); Bass v. State, 597 So.2d 182, 191 (Miss. 1992); Ladner v. State, 584 So.2d 743, 753 (Miss.1991). The reviewing court recognizes that the trial judge is in the best position to determine whether an objectionable remark has had any prejudicial effect. Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990); Alexander v. State, 520 So.2d 127, 131 (Miss.1988). For this reason, the trial court is allowed considerable discretion in determining whether a remark was so prejudicial that it warrants a mistrial. Id.
¶ 14. Evidentiary rulings are also within the trial judge's broad discretion and will only be reversed if the reviewing court perceives an abuse of that discretion. Sumrall v. Mississippi Power Co., 693 So.2d 359, 365 (Miss.1997); Johnston v. State, 567 So.2d 237, 238 (Miss.1990). Furthermore, even if erroneous, the admission of evidence does not require reversal unless it produces unfair prejudice. Century 21 Deep S. Properties, Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992).

B. Analysis
¶ 15. During direct examination of the crime lab analyst, the prosecutor asked whether crack cocaine was "more addictive or less addictive than the powder form" of cocaine. Shipp's attorney promptly objected on the basis of relevance, and the objection was sustained. The defense then moved for a mistrial asserting that the prosecutor's remark was "an inappropriate and improper remark or inquiry." The court noted, "Well, I didn't let her answer it."
¶ 16. The defense never requested that the court instruct the jury to disregard the question. "It is the rule in this State that where an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error." McGowan v. State, 706 So.2d 231 (¶ 46) (Miss.1997)(citing Marks v. State, 532 So.2d 976, 981 (Miss.1988)); see also Berry v. State, 703 So.2d 269 (¶ 32) (Miss.1997); Perry v. State, 637 So.2d 871, 874 (Miss.1994). According to this rule, no error resulted from the prosecutor's question.
¶ 17. Although Shipp referred to the question as "inappropriate and improper," he stated no specific reason for this assertion during the trial. On appeal, Shipp claims that he was forced to make the objection which created "the presumption that the offense which the Appellant was being tried for was possibly more serious than regular cocaine violations." The Mississippi Supreme Court has opined, "[b]ecause the objection was sustained there can be no ground for error." Smith v. State, 724 So.2d 280 (¶ 137) (Miss.1998)( citing Walker v. State, 671 So.2d 581, 616 (Miss.1995)); Perry v. State, 637 So.2d 871, 874 (Miss.1994); Simpson v. State, 497 *304 So.2d 424, 431 (Miss.1986). Again, the case law precludes Shipp's objection as a ground for error because of the fact that the objection was sustained. The trial judge promptly suspended discussion of the objectionable topic and remained within his discretion in determining that the question created no unfair prejudice.
¶ 18. Discerning no abuse of discretion by the trial court and no actual prejudice to the defendant, we decide this issue adversely to Shipp.

B. Shipp's second issue:

Did the prosecutor improperly comment to the jury during his closing argument about the appellant's decision to refrain from testifying.

A. Standard of Review
¶ 19. A party has broad latitude in closing argument. Wells v. State, 698 So.2d 497, 506 (Miss.1997); Hunter v. State, 684 So.2d 625, 637 (Miss.1996); Ivy v. State, 589 So.2d 1263, 1266 (Miss.1991); Dunaway v. State, 551 So.2d 162, 163 (Miss.1989); Monk v. State, 532 So.2d 592, 601 (Miss.1988). Mississippi law provides a restriction to that latitude by prohibiting any comment about the defendant's declining to testify. Dunaway, 551 So.2d at 163. In determining whether a prosecutor's argument necessitates reversal, the test entails whether the "natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." Id. (quoting Craft v. State, 226 Miss. 426, 84 So.2d 531, 535 (1956)).
¶ 20. Because the trial judge "is in the best position for determining the prejudicial effect of an objectionable comment," the trial court is entrusted with discretion in determining whether an improper statement during a closing argument should result in a mistrial. Alexander v. State, 602 So.2d 1180, 1182 (Miss. 1992).

B. Analysis
¶ 21. The State emphasizes the balance between the constitutional interest of not being required to testify and the broad latitude that attorneys exercise in closing arguments. In discussing this balance, the State quotes the opinion in Jones v. State:
"Balanced against this [constitutional] interest however, is the rule that attorneys are to be given wide latitude in making their closing arguments. Thus, although a direct reference to the defendant's failure to testify is strictly prohibited, all other statements must necessarily be looked at on a case by case basis." Jimpson v. State, 532 So.2d 985, 991 (Miss.1988), citing Johnson v. State, 477 So.2d 196, 209 (Miss.1985); Ladner v. State, 584 So.2d 743, 754 (Miss.1991); Shook v. State, 552 So.2d 841, 851 (Miss. 1989). "There is a difference, however, between a comment on the defendant's failure to testify and a comment on the failure to put on a successful defense." Jimpson, 532 So.2d at 991. "Moreover, the State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to a defendant's failure to testify `by innuendo and insinuation.'" Shook, 552 So.2d at 851; Alexander v. State, 610 So.2d 320, 339-40 (Miss.1992).
Jones v. State, 669 So.2d 1383, 1390 (Miss. 1995); see Hobson v. State, 730 So.2d 20 (¶ 27) (Miss.1998). In the case sub judice, the prosecutor did not directly refer to Shipp's failure to testify, so we must examine his remarks for improper inferences.
¶ 22. During closing arguments, defense counsel argued that the prosecution team should have made a better case by apprehending Shipp while he still had the specific $20 bill on his person. In making that argument, defense counsel raised a question about possible defenses:
Now, what would I be arguing if they had caught David with the $20 with the serial number on it? I doubt we'd even be here, ladies and gentlemen; but they didn't do that in this case.
*305 The prosecutor responded to this question in rebuttal:
My colleague ... has done what I have seen for nine years, and I expect to see in each and every trial that I try in the future as I have in the past, and that is the defense that they could have done more.... Good defense lawyers sit over there in this case and every case, and they try to think of what else could we have done to find my man more guilty. They want to say, well, they could have done more.... Now, he can tell you that if we had caught him with the $20, we wouldn't have a defense, but I don't believe that because I've been doing this, again, for nine years; and when we catch them red-handed, do you know what they say? I'm just giving y'all some for instances, "Well, that is me at the crime and I did have the money because you caught me with the money but you entrapped me."
Defense counsel objected, contending that the prosecutor improperly commented on the defendant's failure to testify. The court responded, "Well, I'll overrule it because I didn't hear any statements about the Defendant testifying or not testifying." Shipp asserts that an inference was raised.
¶ 23. After the trial judge overruled the objection, the prosecutor continued:
We're talking about defense lawyers. That "My man was entrapped because they flagged him down." See? There's all kind of excuses.... "If they had had a little more evidence on my man, if they had caught him with that 20," then we ought to have really had him that time. Well, that's not necessarily the case. There is always an excuse.... [I]f you stop him 10 minutes later he may not have [the $20 bill]. He's gone to the folks that's supplying him dope. It takes one to buy. That's no, you knowthe proof is right here people.
Now, these other excuses that come before you, you don't need to bite on those. If that video is not that man right there, that's the only reason to let him go; not that we didn't arrest him right away, not that when we have a confidential informant or an undercover agent, we make several buys....
The prosecutor responded to the questions raised by Shipp's counsel, but he also explained to the jury that the examples he mentioned are not relevant to this case. He did not say anything about the fact that Shipp did not testify. Instead, the prosecutor offered reasons that the defense argument, that the prosecution team should have obtained and presented more proof, was invalid.
¶ 24. In Alexander v. State, 610 So.2d 320, 339 (Miss.1992), the defendant asserted that the prosecutor impermissibly commented on the defendant's right not to testify by saying that only the defendant and God knew what happened. The supreme court upheld the prosecutor's statement, reasoning that the remark referred to an argument by the defendant regarding who actually witnessed the subject homicide. Id. Likewise, in Holland v. State, 705 So.2d 307, 344-45 (Miss.1997), the court determined that the prosecutor was entitled to answer a question raised by the defense and that the prosecutor's statement was "in direct response" to the defense argument. Id.
¶ 25. The remarks which Shipp claims are improper are "in direct response" to the questions raised in Shipp's defense. The prosecutor did not comment, directly or through inference, that Shipp's refusal to testify suggested his guilt. According to the rationale articulated in Alexander and Holland, this Court finds no error in the prosecutor's rebuttal closing argument.
¶ 26. Concluding that no improper argument prejudiced Shipp's case, we affirm the circuit court as to this issue.

IV. CONCLUSION
¶ 27. The trial court remained within its discretion in determining that no prejudice resulted from the prosecutor's question about the addictive quality of crack cocaine. *306 Shipp's objection was sustained, further discussion of the topic was curtailed, and the prosecutor's question did not engender unfair prejudice to Shipp's case. Similarly, we observe that the State created no inference regarding Shipp's election not to testify, and no prejudice resulted from the State's response to Shipp's closing argument. Therefore, the verdict was not influenced by prejudice resulting from the prosecutor's closing argument. We find it far more likely that the jury was influenced by the videotape in reaching a guilty verdict.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF SELLING COCAINE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY-FIVE (25) YEARS SUSPENDED, TO RUN CONSECUTIVELY TO THE SENTENCE CURRENTLY BEING SERVED FOR ANOTHER CASE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.