759 So.2d 495 (2000)
Jesse Lee ECHOLS, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01016-COA
Court of Appeals of Mississippi.
April 25, 2000.
*496 David Clay Vanderburg, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. Jesse Lee Echols, Jr. was convicted in Panola County Circuit Court of count one, conspiracy, count two, burglary of a building, and count three, grand larceny. He was sentenced as an habitual offender to serve consecutively, a term of five years on count one, seven years on count two and five years on count three in the custody of the Mississippi Department of Corrections without the possibility of parole, probation, earned time, good time, or any other administrative reduction of time or early release. Aggrieved by his conviction and sentence, Echols presents two issues for our review. The statement of issues is recited verbatim from his brief:
A. THE COURT ERRED IN OVERRULING DEFENDANT'S OBJECTION DURING THE STATE'S CLOSING ARGUMENT, WHEREBY THE STATE MADE AN IMPROPER COMMENT CONCERNING THE DEFENDANT'S RIGHT TO REMAIN SILENT; AND OTHER IMPROPER COMMENTS MADE DURING CLOSING ARGUMENTS.
B. THE COURT ERRED IN DENYING JURY INSTRUCTION D-1 AS TO COUNT (1), THE CONSPIRACY CHARGE.
Finding no reversible error, we affirm.

FACTS
¶ 2. On June 25, 1998, Melanie Smith, manager of the Shell Gas Mart in Batesville, was counting money in her office at the station for a bank deposit. Her office was located in the rear of the building. Smith was interrupted from counting the money by one of her suppliers. Smith accompanied the supplier to the front of the store; however, before leaving the office, Smith locked the door behind her while leaving money on top of her desk and in the desk drawer. Upon returning to the office a few minutes later, Smith found that the money was missing and immediately called the police after extensively searching the office for the missing money.
¶ 3. Officer McDaniel was the first officer to arrive at the scene. After Smith informed McDaniel of the missing money, McDaniel made a request to view the surveillance tapes. At trial, Officer McDaniel summarized the events that transpired on the video tape. Officer McDaniel stated that he observed Echols going into the back of the store shortly before Smith came out of her office. McDaniel next testified that he observed Freddie Clark coming into the main part of the store. Echols came from the back and met him there. The two spoke briefly, and Echols returned to the back. While Echols was *497 speaking with Clark, Smith exited her office and closed the door behind her. After Echols spoke with Clark, McDaniel observed Echols returning to the back and standing in front of Smith's office door for a few seconds before going inside. McDaniel testified that Echols entered the office and stayed for a few minutes, exited the office and reentered the office. Shortly afterwards, Echols exited the office again and left the store.
¶ 4. After reviewing the tapes, McDaniel issued a radio alert to be on the lookout for two African American males. Officer Jesse Mabry testified that pursuant to the radio alert, he stopped Echols and Clark in Senatobia, MS. A combined total of $2,300 in cash was found in the glove compartment of the car and in Echols's and Clark's pockets.
¶ 5. Clark entered a plea of guilty to the charge of conspiracy to commit grand larceny and testified on behalf of the State. Clark testified that during their conversation in the main part of the store, Echols mentioned that there was money in the back office and asked Clark to "watch out" for him. Clark stated that he asked Echols not to "mess with" the money. Clark denied participating in the burglary and said he did not know how the money got into the glove compartment of the car. Echols did not testify.

Analysis of Issues Presented

I. Did the trial court err in overruling Echol's objection during the State's closing argument, whereby the State made an improper comment concerning Echol's right to remain silent?
¶ 6. Echols argues that during the closing arguments, the assistant district attorney made several improper comments. Echols complains that the following comment made by the assistant district attorney during closing arguments was an impermissible comment on Echols's right not to testify:
As Judge Baker indicated to you, you have to return a verdict on each count separately. You have to decide if he's guilty of grand larceny or not. You have to decide if he's guilty of burglary or not. You have to decide if he's guilty of conspiracy or not. And in order to make those decisions, you not only listen to what the witnesses said and the video tape, but you use your common sense. And that's why I ask you to consider what reason did Mr. Echols and Mr. Clark have for being here that day other than to steal because there is no explanation before this jury for you.
At this point, Echols objected to the comment and requested a bench conference which was not recorded. After returning to the record, the prosecutor continued his final argument and stated that "there is no explanation before this Court and this jury from any witness." At that point, Echols requested a continuing objection.
¶ 7. The Mississippi and the United States Constitutions provide that no person may be compelled to take the witness stand against himself. The Mississippi Supreme Court has held that prosecutors are prohibited from making direct comments on the accused's failure to testify; they are also precluded from referring to the accused's failure to testify by innuendo and insinuation. Jones v. State, 669 So.2d 1383, 1390 (Miss.1995). However, balanced against the constitutional interest of not being compelled to testify is the broad latitude exercised by attorneys in closing arguments. Id. Thus, all statements must be looked at on a case by case basis. Id. There is a difference between a comment on the defendant's failure to testify and a comment on the failure to put on a successful defense. Id. Moreover, the State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to a defendant's failure to testify by innuendo and insinuation. Id.
¶ 8. In the case sub judice, the State did not directly refer to Echols's failure to *498 testify; thus the particular circumstances in this case must be examined. See Shipp v. State, 749 So.2d 300 (Miss.Ct.App.1999). In examining the facts and circumstances of the case at bar, we find that the prosecutor's statement was not a comment on Echol's failure to testify, but rather the closing remark concerned the lack of an explanation for evidence presented to the jury.
¶ 9. During opening argument, counsel for the defense told the jury that Echols went into the Shell station to use the restroom. During trial, Echols tried to establish through cross-examination his reasons for going to the back of the store. However the video tape, which was viewed by the jury, indicated to the contrary. The tape did not show Echols going to the restroom. Thus, defense counsel's remarks during the opening argument and the lack of evidence establishing Echols's defense invited the State's remarks in the closing argument. See Jones, 669 So.2d at 1391. The State merely pointed out the lack of evidence showing Echols's intention to use the restroom. The prosecutor's remark was not, directly or through inference, a comment on Echol's failure to testify.
¶ 10. Echols also complains that the State made other improper comments during the closing argument. During Echols's closing argument, Echols's counsel asked that the jury "weigh and consider all evidence and see if every loophole is covered, see if there is any reasonable doubt." In response, the prosecutor said, "Finally, it was argued to you that there are loopholes. I thought that was a dirty word, ladies and gentlemen. All we ever hear about is the general public complaining that crooks get off on loopholes." Echols objected to the reference to Echols as a crook. The trial judge sustained the objection and instructed the jury to disregard the statement. Echols moved for a mistrial, but the trial judge denied the motion.
¶ 11. After the objection, the State changed the word "crook" to "people who are charged with criminal offenses," and continued the closing argument by stating, "Isn't it a fact that we as a society, courts, prosecutors, defendants and defendants' attorneys are criticized because people charged with criminal offenses get off with loopholes or legal technicalities?" The defense then objected that the remark was improper because "it was not the job of the jury to decide the fate of the criminal justice system or the fate of society." The trial judge sustained the objection and again denied Echols's motion for mistrial.
¶ 12. A party has broad latitude in closing argument. Wells v. State, 698 So.2d 497, 506 (Miss.1997). In determining whether a prosecutor's remarks necessitate reversal, the test entails whether the "natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." Davis v. State, 530 So.2d 694 (Miss. 1988). The trial judge is in the best position to determine the prejudicial effect of the objectionable comment; thus the trial court is entrusted with the discretion to determine whether an improper statement made during a closing argument warrants a mistrial. Alexander v. State, 602 So.2d 1180, 1182 (Miss.1992).
¶ 13. We hold that the remarks made by the State were improper but harmless. Given the evidence of the video tape, the State's comments during closing argument could not have prejudiced the jury. Furthermore, the trial court properly admonished the jury to disregard the statements; it is presumed that the jury disregarded those remarks. See Ormond v. State, 599 So.2d 951, 961 (Miss.1992). The trial court did not commit reversible error in refusing to grant Echols's motion for mistrial based on the prosecution's improper comments.

II. Did the trial court err in denying jury instruction D-1 as to count (1), the conspiracy charge?
*499 ¶ 14. Echols argues that the trial court erred in refusing to give a peremptory instruction on the conspiracy charge. Echols contends that the evidence was insufficient to support a conspiracy. Echols relies on the fact that Freddie Clark testified that there was no conspiracy between Echols and himself and that they did not agree to break and enter the office at the Shell Gas Mart. We find that the trial judge did not err in refusing to allow the instruction.
¶ 15. The standard of review for overruling the peremptory instruction is the same as that of a motion for directed verdict or a JNOV, each of which tests the sufficiency of the evidence as a matter of law, viewing the evidence in a light most favorable to the verdict. Watson v. State, 722 So.2d 475 (Miss.1998). Credible evidence consistent with guilt must be taken as true. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Gavin v. State, 473 So.2d 952, 956 (Miss. 1985). If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the peremptory instruction or judgment notwithstanding the verdict is required. Id. "On the other hand, if there is substantial evidence opposed to the request or motionthat is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair minded men in the exercise of impartial judgment might reach different conclusionsthe request or motion should be denied." Id.
¶ 16. Conspiracy agreements need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts and conduct of the alleged conspirators. Franklin v. State, 676 So.2d 287, 288 (Miss.1996). In Watson, which is similar to the case at bar, the co-conspirator entered a guilty plea, but then testified that he did not agree to participate in a crime with Watson. Watson claimed that there was insufficient evidence of conspiracy. In supporting the trial judge's refusal to allow the peremptory instruction, the Mississippi Supreme Court held that direct evidence was not needed to establish the conspiracy. See Watson 722 So.2d at 479.
¶ 17. In the case sub judice, the facts show that the two men entered the store together. They did not buy anything. Echols went into the back area, saw the money in the office, and returned to ask Clark to keep watch for him. Clark remained in the front while Echols broke into the office and took the money. Afterwards, both men immediately left the store together in the same vehicle. Once captured, the officers found a combined total of $2,300 in the vehicle and in Echols's and Clark's pockets. The trial court was correct in finding that sufficient evidence existed to prove a conspiracy.
¶ 18. THE JUDGMENT OF PANOLA COUNTY OF CONVICTION ON COUNT I OF CONSPIRACY, COUNT TWO OF BURGLARY OF A BUILDING, COUNT THREE OF GRAND LARCENY AND SENTENCE AS AN HABITUAL OFFENDER TO THREE CONSECUTIVE TERMS OF FIVE, SEVEN, AND FIVE YEARS, RESPECTIVELY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.