LEE, P.J., for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. On August 12, 2008, a jury in the Washington County Circuit Court found Charles R. Nelson guilty of Count I, uttering a forgery; Count II, conspiracy; Count III, uttering a forgery; and Count IV, conspiracy. Nelson was sentenced to ten years with five years suspended on Count I, five years with two and one-half years suspended on Count II, ten years with five years suspended on Count III, and five years with two and one-half years suspended on Count IV. The sentence in Count II was ordered to run consecutively to Count I; the sentence in Count III was ordered to run consecutively to Counts I and II; the sentence in Count IV was ordered to run concurrently with the sentences imposed in Counts I, II, and III. All
 
 *536
 
 sentences were ordered to be served in the custody of the Mississippi Department of Corrections.
 

 ¶ 2. Nelson filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court subsequently overruled Nelson’s post-trial motion. Nelson now appeals, asserting that the trial court erred in failing to grant his motion for a JNOV as the evidence was not sufficient to support his convictions.
 

 FACTS
 

 ¶ 3. Christine and Derek Thompson, owners of Thompson Management Services, Inc., discovered that two unauthorized checks had been written on their business accounts. These checks were kept locked in a desk drawer in their office. The Thompsons notified the Green-ville Police Department that unauthorized checks were drawn from these two accounts. One check was made payable to Larry Turner in the amount of $916. The account holder on this check was listed as Thompson Management Services. The second cheek was made payable to Larry Turner in the amount of $700.50. The account holder on this check was County Housing RHED, a nonprofit group of which Derek is on the board. The Thomp-sons contracted with County Housing RHED to manage apartments for low income families in Greenville, Mississippi. The Thompsons did not know Turner, nor did they recognize the signature on the checks.
 

 ¶ 4. Sometime after the two stolen checks had been cashed, Turner was arrested by the police during an attempt to pass another forged check. Turner was found in the car with Nelson; however, Nelson was not arrested for any wrongdoing at the time. Upon questioning by the police about the two forged checks, Turner admitted to cashing the checks and said he had received the checks from a man named “William.” According to Turner, William approached Turner and sought his help in cashing checks. William told Turner that he obtained the checks from the company he worked for and did not have identification to cash the checks. William then drove Turner on two separate occasions to cash each check. Each time Turner cashed the check, he gave the money to William and received $150 in cash for his help. The police presented Turner with a photographic lineup, and Turner identified Nelson as the man he knew as “William.” Turner also identified Nelson in court as the man who gave him the checks to cash. Nelson is Christine’s cousin and worked for Thompson Management Services as the head of property maintenance. Nelson was subsequently arrested.
 

 DISCUSSION
 

 ¶ 5. In his only issue on appeal, Nelson argues that the trial court erred in failing to grant his motion for a JNOV as the evidence was insufficient to support his convictions of uttering a forgery and conspiracy. A motion for a JNOV challenges the sufficiency of the evidence.
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ”
 
 Id.
 
 (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime existed, this Court will affirm the denial of the motion for a JNOV.
 
 Id.
 
 If we find that reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.
 
 Id.
 
 Furthermore, the
 
 *537
 
 jury is responsible for weighing any conflicting evidence, “evaluating the credibility of witnesses, and determining whose testimony should be believed.”
 
 Ford v. State,
 
 737 So.2d 424, 425(¶ 8) (Miss.Ct.App.1999).
 

 1. Uttering a Forgery
 

 ¶ 6. Nelson argues that the State failed to prove the elements of uttering a forgery. According to
 
 Duhart v. State,
 
 927 So.2d 768, 775(¶15) (Miss.Ct.App.2006):
 

 It is clear from [Mississippi Code Annotated section 97-21-59 (Rev.2006)] that in order to sustain a conviction of uttering forgery, the State must have proved beyond a reasonable doubt (1) that the defendant published or uttered as true (2) a forged, altered or counterfeit instrument, (3) knowing the instrument to be forged, altered or counterfeited, (4) with intent to defraud.
 

 Nelson’s chief contention is that the State failed to provide evidence that Nelson presented the forged checks as true documents. Nelson claims that only Turner presented the checks to be cashed. Although Nelson did not physically cash the checks, he is guilty of uttering a forgery as a principal because he acted in concert with Turner.
 
 Ross v. State,
 
 914 So.2d 814, 816(1111) (Miss.Ct.App.2005). Turner, who was an admitted drug user, testified that Nelson sought his help in cashing some checks. Turner stated that Nelson told him the checks came from Nelson’s place of business, but Nelson did not have the proper identification needed to cash the checks. Nelson took Turner to cash the two checks, both of which were made payable to Turner. We find that there was sufficient evidence for the jury to find that Nelson possessed the forged checks and attempted to pass these checks off as true.
 

 ¶7. In regard to the second element, Christine testified that she was certain the instrument was forged. Christine stated that they print all their business ehecks using a computer program, and the forged checks were filled out using a typewriter. Christine and Derek testified that the signature on the checks was not theirs. The Thompsons further testified that Nelson did not have permission to use the business checks. As to the third element, the jury could reasonably infer that Nelson knew the checks were forged. In regard to the final element, if Nelson made the utterance with knowledge of the forgery, the jury could reasonably infer that he did so with the intent to defraud.
 
 See Duhart,
 
 927 So.2d at 775(¶ 16). Viewing the evidence in the light most favorable to the State, we find that reasonable, fair-minded jurors could have concluded that Nelson was guilty of uttering a forgery.
 

 2. Conspiracy
 

 ¶ 8. Conspiracy is a combination of two or more persons who conspire to commit a crime. Miss. Code Ann. § 97-1-1 (Rev.2006). “Conspiracy agreements need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts and conduct of the alleged conspirators.”
 
 Echols v. State,
 
 759 So.2d 495, 499(¶16) (Miss.Ct.App. 2000). Furthermore, the offense can be complete without showing an overt act in furtherance of the conspiracy.
 
 Davis v. State,
 
 485 So.2d 1055, 1058 (Miss.1986).
 

 ¶ 9. According to Turner’s testimony, Nelson approached him and offered him money to cash checks from Nelson’s employer. Turner stated that he agreed to help Nelson because he needed money for drugs. Nelson gave Turner $150 each time Turner cashed a check for him. When Turner was arrested for attempting to pass another forged check, Nelson was
 
 *538
 
 waiting in the car for Turner. The jury could reasonably conclude that Nelson and Turner were involved in a common scheme to cash forged checks. Although Nelson exercised his constitutional right to not testify on his behalf, the supreme court has held that the testimony of a co-indictee or a co-conspirator, if not improbable, or self-contradictory, or “substantially impeached,” is sufficient to sustain a conviction.
 
 Fairchild v. State,
 
 459 So.2d 793, 798 (Miss.1984). Turner was an admitted drug addict, but his testimony was not self-contradictory or thoroughly impeached. Viewing the evidence in the light most favorable to the State, we find that reasonable, fair-minded jurors could have concluded that Nelson was guilty of conspiracy.
 

 ¶10. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, UTTERING A FORGERY, AND SENTENCE OF TEN YEARS WITH FIVE YEARS SUSPENDED; COUNT II, CONSPIRACY, AND SENTENCE OF FIVE YEARS WITH TWO AND ONE-HALF YEARS SUSPENDED; COUNT III, UTTERING A FORGERY, AND SENTENCE OF TEN YEARS WITH FIVE YEARS SUSPENDED; AND COUNT IV, CONSPIRACY, AND SENTENCE OF FIVE YEARS WITH TWO AND ONE-HALF YEARS SUSPENDED; WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I; WITH THE SENTENCE IN COUNT III TO RUN CONSECUTIVELY TO THE SENTENCES IN COUNTS I AND II; AND WITH THE SENTENCE IN COUNT IV TO RUN CONCURRENTLY WITH THE SENTENCES IN COUNTS I, II, AND III, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY RESTITUTION IN THE AMOUNT OF $916 TO THOMPSON MANAGEMENT SERVICES AND $700.50 TO COUNTY HOUSING RHED GRANT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.