LEE, J.,
for the court.
PROCEDURAL HISTORY
¶ 1. In February 1997, Barbara Washington Williams and Luie Vigo Santiago were indicted by a Wilkinson County grand jury on charges of sale of a schedule II controlled substance within a church zone and possession of a schedule II controlled substance with intent to deliver within a church zone. Williams filed a motion requesting severance, and the judge severed her case from that of her co-defendant, Santiago. Williams’s first trial in June 1997 ended in a mistrial after statements in appreciation of law enforcement officers were made in open court in the presence of the jury, which the judge found caused irreparable prejudice to Williams. After a second trial in October 1997, a jury convicted Williams on Count I of sale of cocaine in a church zone, but was not able to reach a verdict on Count II of possession of cocaine with intent to deliver within a church zone. Thereafter, Williams was sentenced to serve thirty years in the custody of the Mississippi Department of Corrections. Williams’s motion for new trial and/or judgment notwithstanding the verdict was denied, and she now appeals to this Court alleging the following: (1) the court erred when it denied defendant’s motion for a mistrial after a State’s witness referred to the co-defendant as a “Columbian”; (2) the evidence presented at trial was insufficient to support the jury’s verdict; and (3) the trial court erred in denying the defendant’s motions for a mistrial when the jury sent two notes to the judge indicating its confusion and lack of understanding. We review these issues and find no merit; accordingly, we affirm.
FACTS
¶ 2. On or about November 17, 1996, confidential informant Kendrell Davis, wearing a body wire, went to a trailer in Crosby, Mississippi, and made a controlled buy of $1,800 worth of cocaine from the appellant and from Luie Vigo Santiago. Officers Kenneth Cotton and Kenny Anderson of the Mississippi Bureau of Narcotics and Wilkinson and Amite County police officers monitored the transaction. Upon Davis’s return from the meeting, agents from the Bureau of Narcotics went to the trailer and found Santiago with the marked $1,800 in his possession. Agent Cotton left and returned with a search warrant, and thereafter found cocaine in Williams’s purse and in a duffle bag under a bed. Williams and Santiago were immediately arrested. The distance from the front door of the trailer to the front door of Crosby Union Baptist Church was just over 1,200 feet per Agent Cotton’s measurement.
DISCUSSION OF THE ISSUES
I. DID THE COURT ERR IN DENYING THE APPELLANT’S MOTION FOR MISTRIAL?
¶ 3. Williams first argues that the trial judge erred in denying her motion for mistrial during jury selection.
“This Court has repeatedly held that the granting of a motion for a mistrial is within the sound discretion of the trial judge.” The reviewing court recognizes that the trial judge is in the best position to determine whether an objectionable remark has had any prejudicial effect. For this reason, the trial court is allowed considerable discretion in determining whether a remark was so prejudicial that it warrants a mistrial.
*574 Shipp v. State, 749 So.2d 300(¶ 13) (Miss.Ct.App.1999) (citations omitted).
¶ 4. After the jurors were selected but prior to their seating, Williams moved for a mistrial because the prosecutor in voir dire referred to Luis Santiago as a “Co-lumbian.” Williams argued that the prosecutor was attempting to introduce race to prejudice the venire toward Williams by association. Also, Williams claims the prosecutor erroneously referred to Santiago as being married to Williams’s sister, again attempting to bias the jury by association. The prosecutor responded that he did intend to put on evidence to prove these two things, as he told the court previously. The court overruled the motion and instructed all counsel not to interject anything they did not intend to put into evidence.
¶ 5. Later in the trial, defense counsel was cross-examining Agent Kenneth Anderson. In response to the question of how he knew Santiago and Williams had acted in concert with one another, Agent Anderson said the marked $1,800 was found in Santiago’s pocket, which Williams must have given him, and then added, “And then, you know, the report, and I think you got a copy Of it, there was a check that he had in his pocket to some guy. And Luis is from Columbia and he don’t know that guy in Crosby from me or anybody else.” Later, when the jury recessed for lunch, the judge and attorneys met in chambers at which time Williams’s attorney moved for a mistrial stating:
MS. DUNMORE: First of all, I move for a mistrial because Sergeant Anderson, Officer Anderson, referred to Luis as a Columbian and the Court has ruled as instructed that he should not be referred to as a Columbian because it was prejudice to the defendant and this witness did that in front of the jury. I did not make the statement in front of the jury because I thought it would even further prejudice my client. It’s their responsibility to inform their witnesses what the rules of the Court are and I think it prejudiced my client. This is the second time it was done. It was done earlier in the trial. I think it was intentional or may even be an attempt to force me to ask for a mistrial on it, but I don’t have any other choice but to protect my client’s interest. So I move for a mistrial that they violated the order limiting the use of the term Columbian in reference to Luis.
MR. ROSENBLATT: Which we would respond, Your Honor, that the first time the Court instructed us was in response to one of the attorneys referring to him as a Columbian. The Court instructed us at this time to refrain from referring to him by nationality by calling him a Hispanic. We did not specifically instruct our witnesses one by one to refer to him as a Columbian because that would be in the scope of the Court’s order and the Court is free to take testimony on the questions that this witness — this witness’s remarks came as a total surprise to us and came in response to questions by Ms. Dunmore. Not in our questioning did we in no way inform him to make that reference or elicit it from him or instructed him to do so. And having made the objection, we then at that point specifically instructed all of our witnesses not to make any sort of nationality references.
¶ 6. The court found that Agent Anderson’s remarks were made in response to defense counsel’s question, and the testimony was harmless because it was “not a big deal” about his nationality. Williams cites Rule 3.12 of the Uniform Rules of Circuit and County Court Practice which states:
*575 Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party’s attorneys, or someone acting at the behest of the party or the party’s attorney, resulting in substantial and irreparable prejudice to the movant’s case.
Upon motion of a party or its own motion, the court may declare a mistrial if:
1. The trial cannot proceed in conformity with law; or
2. It appears there is no reasonable probability of the jury’s agreement upon a verdict.
¶ 7. Williams argues that Anderson’s statement was highly prejudicial because everyone knows that the country of Columbia is synonymous with lawless drug cartels. Therefore, Anderson’s referring to Santiago as a Columbian in direct violation of the court’s admonition resulted in “substantial and irreparable prejudice” to her trial because Anderson’s statement created in the minds of the jurors an impermissible presumption that she, too, was a drug dealer.
¶ 8. The State first rebuts that since Williams failed to raise a contemporaneous objection, she is barred from appellate review. Defense counsel told the court that she did not object at the time because she feared bringing it to the jury’s attention. “Unless the objection is raised contemporaneously so as to allow the trial court to consider the issue and possible remedies, the issue is waived.” Collins v. State, 734 So.2d 247(¶ 8) (Miss.Ct.App.1999). With Williams’s failure to object when the improper testimony came forth, the judge was not given opportunity to consider remedial measures. Although this was error, we find it to be harmless in light of the fact that the other evidence overwhelmingly supported the jury’s verdict.
¶ 9. Concerning the merits of the motion for mistrial, we refer back to Rule 3.12 which states that the judge should grant the motion if the trial cannot proceed in conformity with law or if it appears there is no reasonable probability of the jury’s agreement upon a verdict. Williams makes no convincing argument that the trial could not proceed in conformity with law and, as described further in issues II and III, the evidence was sufficient to warrant the jury’s agreement upon their verdict of guilty. There is no merit to this issue.
II. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE VERDICT?
¶ 10. With her next issue, Williams argues the evidence was insufficient to support the jury’s verdict of guilty, and we look to our requisite standard of review.
To test the sufficiency of the evidence, we must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty.
Jones v. State, 791 So.2d 891(1110) (Miss.Ct.App.2001).
*576 ¶ 11. Williams argues that Davis’s incriminating testimony was not reliable because Davis was a convicted felon with pending felony charges against him. Williams also contends that Davis’s testimony was unsupported by other evidence, namely that although Davis claimed to have bought cocaine from Williams, Santiago was the one with the marked money in his pocket. Plus, Williams argues the State failed to produce evidence that Williams had handled the money or the cocaine.
¶ 12. Davis is not the only person who testified for the prosecution. Agents Kenny Cotton and Kenneth Anderson also testified as to the events they heard over Davis’s body wire. Additionally, the jury knew of Davis’s situation and was able to give whatever weight necessary to his testimony. Our standard of review requires that matters regarding the weight and credibility be resolved by the jury, and we are allowed to reverse if reasonable and fair-minded jurors could only find the accused not guilty. Here, viewing the evidence in a light favorable to the State, we find the evidence was sufficient to support the verdict. This issue has no merit.
III. DID THE TRIAL COURT ERR IN DENYING THE DEFENDANT’S MOTIONS FOR A MISTRIAL WHEN THE JURY SENT TWO NOTES TO THE JUDGE INDICATING ITS CONFUSION AND LACK OF UNDERSTANDING?
¶ 13. Williams finally argues that the trial court erred in answering the two notes sent by the jury and that the trial judge erred in giving the instruction concerning the form of the verdict.
¶ 14. Following are excerpts from the record where the jury sent the judge two separate notes while they were deliberating:
THE COURT: The time now is 4:30 and we have received a note from the jury and the note says, “Was what [sic] found in the bag under the bed and the purse, should it be Count 2 or separate?”
MS. DUNMORE.: Okay. Read it again.
THE COURT: ‘Was what [sic] found in the bag under the bed and the purse, should it be Count 2 or separate?”
(OFF THE RECORD.)
(BACK ON THE RECORD.)
THE COURT: The Court has consulted with counsel for the defendant and the district attorneys and the answer that will be sent back to the jurors is that the answer is “Count 2. Lillie Blackmon Sanders, Circuit Court Judge, at 4:35 p.m.”
¶ 15. Half an hour later, the jury sent a second note which produced the following dialog in chambers:
THE COURT: The time is now 5:05 p.m. We’ve just received a second note from the jury and it says, We don’t understand Count 2. Is Exhibit No. 8 and Exhibit No. 14 both under Count 2?”
MS. DUNMORE: Same, yes.
THE COURT: And the answer is yes.
¶ 16. Williams claims that the answers given by the judge in response to the jury’s question were improper because they were impermissible comments upon the testimony and upon the weight of the evidence in violation of Miss.Code Ann. § 99-17-35 (Supp.2002).[1] Williams cites to *577 Mickell v. State, 735 So.2d 1031 (¶¶ 9-10) (Miss.1999), which stated:
As a general proposition, the trial judge should not give undue prominence to particular portions of the evidence in the instructions. This prophylactic rule has the salutary purpose of protecting the jury from their natural inclination to put great weight in the judge’s statements. To that end, this Court has held that instructions which emphasize any particular part of the testimony in such a manner as to amount to a comment on the weight of that evidence are improper.... In the present case, whether or not Mickell had a gun was a central issue to the case.
Mickell, 735 So.2d at (¶¶ 9-10) (citations omitted). The Mickell jury sent a note to the judge asking whether or not they could convict a person of armed robbery without the policeman finding the gun. Id. at (¶ 5). Over Mickell’s objection, the trial court wrote “yes” on the note and returned it to the jury, and the jury subsequently found Mickell guilty of armed robbery. Id.
¶ 17. In the present case, the notes sent by the jury did not require the judge to comment on the evidence, but merely required clarification on the “housekeeping” type issue of which evidence went with which count, not like in Mickell where the judge’s answer acted to seal the jury’s verdict. Williams also argues that the form of the verdict was confusing and misleading, as evidenced by the jury’s need to send notes to the judge stating such. However, since the jury was unable to reach a verdict on Count II, Williams has shown no prejudice, and we find no merit.
¶ 18. THE JUDGMENT OF THE WILKINSON COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF A CONTROLLED SUBSTANCE, COCAINE, WITHIN A CHURCH ZONE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO WILKINSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.

. "The judge in any criminal cause, shall not sum up or comment on the testimony, or charge the jury as to the weight of evidence....” Miss.Code Ann. §99-17-35 (Supp.2002).