## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-KA-00657-SCT

*PHILLIP McGILBERRY a/k/a PHILLIP CHARLES McGILBERRY, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/10/1998 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | J. RONALD PARRISH |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | JEANNENE PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/26/2001 |
| MOTION FOR REHEARING FILED: | ; denied 7/26/2001 |
| MANDATE ISSUED: | 5/17/2001 |

### BEFORE PITTMAN, C.J., SMITH AND EASLEY, JJ.

### PITTMAN, CHIEF JUSTICE, FOR THE COURT:

¶1. Phillip Charles McGilberry, Jr. was indicted on October 30, 1997, by the Jones County Grand Jury for the murder of Marquelon Shelby in violation of Miss. Code Ann. § 97-3-19(1). Prior to trial the State moved in limine to exclude evidence of an altercation that had occurred between McGilberry and Shelby two months prior to Shelby's death. The trial court granted the motion. After a four-day trial, the jury returned a verdict of guilty for the crime of murder. The trial judge subsequently sentenced McGilberry to serve life in the custody of the Mississippi Department of Corrections. The trial court denied McGilberry's motion for a new trial or, in the alternative, j.n.o.v.

¶2. McGilberry perfected a timely appeal seeking relief in the form of a reversal of the judgment and conviction of the trial court. McGilberry also asks that this Court remand his case to the trial court or grant a new trial on the charge of manslaughter.

### FACTS

¶3. It is undisputed that Marquelon Shelby was shot to death by Phillip Charles McGilberry, Jr. on June 13, 1997. The shooting occurred in a trailer that was Shelby's barbershop. The trailer also served as a place where people came to drink and watch television.

¶4. The evening of the murder, Shelby had finished cutting hair and was watching a basketball game with some of the patrons. Before the shooting occurred, McGilberry entered the trailer twice for no apparent reason. Testimony regarding whether there was an exchange of words between the two men before the shooting took place was inconsistent, although it appears that when McGilberry entered Shelby raised his

arms into the air and said, "What's up? What you want to do?" before McGilberry pulled a gun from under his sweatshirt and fired at Shelby causing his death.

## DISCUSSION

¶5. McGilberry claims that the trial court should not have excluded evidence of a prior altercation between Shelby and him. The altercation, where Shelby allegedly beat McGilberry with an iron pipe, occurred two months before Shelby was shot by McGilberry. McGilberry contends that the exclusion of the evidence adversely affected his ability to make a claim that he was acting in self-defense or to attempt to mitigate his actions from the crime of murder to manslaughter.

¶6. The State filed its Motion in Limine on the day of trial, and it was sustained by the trial court, ruling that the altercation was too remote in time. The trial court later reiterated during trial that the altercation was too remote in time and not relevant to the crime. Counsel for McGilberry made several attempts to introduce evidence of prior threats by Shelby to McGilberry, that Shelby was known to carry a weapon, and that there were earlier disputes between the two men in the hope of showing bad character on the part of Shelby.

¶7. The rule of evidence applicable to this case is Mississippi Rule of Evidence 404 (a)(2) which states:

> Rule 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES
>
> (a) *Character Evidence Generally*. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> (2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor;

The Comment to Rule 404(a)(2) states:

> Ordinarily a victim's character is irrelevant.... Under specific circumstances, however, the character of a victim may be relevant. This would most likely arise in instances where the defendant claims that the victim was the initial aggressor and that the actions were in the nature of self-defense. In order to prove this [victim was initial aggressor or defendant's actions were in nature of self-defense] the defendant must offer evidence of an overt act perpetrated against him by the victim. *Freeman v. State*, 204 So.2d 842 (Miss.1967)....

Miss. R. Evid. 404(a)(2) cmt.

¶8. This Court has stated, "[t]he general rule is that evidence of the bad character of the deceased is competent where there is doubt as to which of the parties was the aggressor." *Arrington v. State*, 366 So.2d 246, 248 (Miss. 1979). In the present case, any aggression on the part of Shelby could not be attributed to the day of his death, but only to a fight that happened two months before.

¶9. McGilberry contends that he had reasonable apprehension that Shelby would cause him serious bodily

injury. He also argues that the serious bodily injury was imminent. The record is clear that Shelby was not the aggressor. Testimony indicates that McGilberry did not appear to be apprehensive. When McGilberry entered the trailer and shot, Shelby had been sitting on the couch watching a basketball game. The State put on adequate eyewitness testimony which refuted McGilberry's claim of self-defense.

¶10. Andra Jones, an eyewitness to the shooting, testified that on the day Shelby was killed by McGilberry, Shelby was "very generous, very friendly" [towards McGilberry]. Jones further testified that "there was no reason for animosity. . . " and that Shelby was "on the couch and he was very normal until he was shot." Jones's testimony was corroborated by Johnny Stewart, another eyewitness. Stewart also testified that he did not hear anything between Shelby and McGilberry prior to McGilberry shooting Shelby to death. Ralph Thompson, another eyewitness to the murder, testified that Shelby was sitting on the couch watching the basketball game when McGilberry pulled a gun from underneath his sweatshirt and shot Shelby to death.

¶11. The testimony shows that McGilberry planned to kill Shelby that day. McGilberry entered the trailer three times before shooting Shelby. The first two times McGilberry entered the trailer he was wearing a t-shirt. When he returned the third time, McGilberry had on a sweatshirt. Logically, the jury could infer that McGilberry put on the sweatshirt to conceal the gun he was going to use to murder Shelby.

¶12. Regarding motions in limine, this Court applies the following standard:

> [A] motion in limine "should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury."

***Whittley v. City of Meridian***, 530 So.2d 1341, 1344 (Miss. 1988) (quoting ***State v. Quick***, 597 P.2d 1108, 1112 (Kan. 1979)). *Accord*, ***Hageney v. Jackson Furniture of Danville, Inc.***, 746 So.2d 912, 918 (Miss. Ct. App. 1999). The trial judge correctly determined that the evidence McGilberry wanted to present was not admissible in accordance with the requirements as set out in ***Arrington*** and that the altercation two months previously was too remote in time to be relevant to the crime.

¶13. This Court has outlined the general rule on self-defense as stated in 40 Am.Jur.2d *Homicide* §145, at 434 (1968):

> "The fault in bringing on a difficulty which will deprive one of the right of self-defense is not confined to the precise time of the fatal encounter which results, but may include faults so closely connected with the difficulty in time and circumstances as to be fairly regarded as operating to bring it on. A plea of self-defense is of no avail, notwithstanding the deceased provoked the original quarrel with the accused, where, after that quarrel had ended, and there had been a cessation of the conflict, or the deceased had withdrawn therefrom, a subsequent difficulty was provoked or brought about by the accused. He is to be deemed the aggressor for bringing on or renewing the affray, even though, in so doing, he had no intention of killing or doing serious bodily harm." For a homicide to be justifiable on the ground of self-defense, the danger to the slayer must either be actual, present and urgent or the slayer must have reasonable grounds to apprehend a design on the part of the deceased to kill him or do him some great bodily harm and, in addition, there must be imminent danger of such design being accomplished. ***Bright v. State***, 349 So.2d 503 (Miss.1977).

*Arrington v. State*, 366 So.2d at 248.

¶14. McGilberry points to *King v. State*, 65 Miss. 576, 5 So. 97 (1888), where the Court determined that a victim's prior threats against a defendant and evidence that the victim as known to keep a weapon on his person should be admitted so that the jury could determine "whether or not appellant had reasonable cause to apprehend danger to his life or limb at the time of the killing...." *Id.* at 582, 5 So. at 97. *King* is not applicable to the present case. In *King*, Cox, the victim, and King were having a heated discussion regarding a pending court matter when Cox angrily stated "I will kill you if you keep on bothering me, or if you say anything more to me about it; and raised up and run his hand into his pocket as if he was going to kill me sure enough," upon which King drew his pistol and fired. *Id.*

¶15. As previously discussed, the record here shows a significantly different factual situation than the one found in *King*. McGilberry entered and exited the trailer twice without any conversation occurring between he and Shelby, before he entered a third time and shot Shelby. On the third "visit" only a brief conversation took place between the two men, with Shelby raising his arms into the air and asking "What's up? What you want to do?" before McGilberry fired the fatal shots. This exchange bears little resemblance to what the Court considered in *King* when it determined that Cox's prior threats and that he often kept a weapon on his person should have been admitted.

¶16. McGilberry also refers to *Stoop v. State*, 531 So.2d 1215, 1219-20 (Miss. 1988), where this Court held that a defendant's self-defense argument was impaired and the jury was prevented from ascertaining the defendant's state of mind when the trial court refused to admit evidence that the victim had previously threatened the defendant. *Stoop* is also factually inapplicable to the present case. Stoop had been threatened by Williams, the deceased, the day before Stoop killed Williams. *Id.* at 1217. Stoop reported the threat to the police, who told Stoop that Williams was "known to carry a gun." *Id.* The record in the case sub judice does not show that Shelby had made any recent threat of serious harm that would have placed McGilberry in a position of apprehension as was found in *Stoop*. Also, Chief R.L. Jenkins testified that there was no police record of any altercation occurring between McGilberry and Shelby.

¶17. Finally, McGilberry refers to *Lee v. State* as authority that use of prior threats to determine the mind set of a defendant is admissible:

> In *Lee v. State*, 160 Miss. 618, 134 So. 185 (1931) we expanded the permissible use of prior threats beyond claims of self-defense. "We think the condition of the defendant's mind, at the time of the fatal shooting is important in the case at bar in determining whether the killing was malicious and wilful, or with malice aforethought, or whether justifiable, and if not justifiable, was done under a mistaken belief, honestly and entertained, as bearing on the question of possible manslaughter. If the previous conduct of the deceased was, as testified to, hostile, it would constitute a situation highly provocative in its nature, and such conduct on repetition, was calculated to highly exasperate and inflame the mind of the ordinarily reasonable man. It is well known that there is a marked difference between the effect of an act when accompanied by previous provocation and one not so accompanied. Men, at best are fallible and frail beings, and where there is a persistent effort to provoke a difficulty by one person against another, the mind reacts with violence, although it is the mind of an ordinarily prudent and reasonable man."

*Day v. State*, 589 So.2d 637, 642-43 (Miss. 1991).

¶18. In *Day*, the defendant and Johnson, the victim, had been in a heated exchange that included physical pushing, punches being thrown and verbal threats. The fight was stopped, and the two men were separated. Before leaving, Day and Johnson agreed to meet later in that evening to settle the dispute. Day drove to the meeting place and pulled a gun out of the glove box of the vehicle he was driving. He stepped out of the car and raised the gun to fire a warning shot, but the safety was still engaged. While Day attempted to turn off the safety mechanism, the gun fired hitting Johnson in the back and killing him. Day and Johnson had a history of difficulties, that included numerous threats made by Johnson and Johnson's chasing Day with a 'box-cutting' razor a few months prior to the shooting. Johnson apparently took every opportunity to express to Day his dislike of him.

¶19. During the trial, Day proffered evidence that Johnson had made previous threats against him, that Johnson was known to carry a razor, and that Johnson had chased him with a razor around his uncle's store . Day's proffer was made in the hope of showing that he did not have the requisite state of mind to constitute premeditated murder. The State objected on the basis of Rule 404(a)(2) claiming that Day had "failed to lay the proper foundation for self-defense" and "asserting that the evidence of Johnson's prior threats and that Johnson was known to carry a gun was inadmissible character evidence of the victim." *Day*, 589 So.2d at 641. "Day offered the testimony to demonstrate the relationship between himself and Johnson, and to explain why their personal relationship would have caused him to panic or act irrationally at the time of the shooting." *Id.* This Court ruled that the evidence was admissible under Rule 404(a)(2) because it was presented to show Day's state of mind and not just to attack the victim's character.

¶20. While *Day* is factually similar to the present case in that there was a previous altercation between McGilberry and Shelby, the similarities end on the day Shelby was shot. Day was engaged in an longstanding conflict that culminated in Johnson's death on the same day that they had previously fought. Obviously emotions from the previous encounter were still running high when the two met again and Johnson was killed. McGilberry, although the victim of a beating at the hands of Shelby two months previous cannot make the same claim as Day. Testimony clearly showed that McGilberry uneventfully entered and exited the trailer twice where Shelby was watching a game. An air of perpetual hostility, such as existed between Day and Johnson, was not present prior to McGilberry's entering the trailer the third time and shooting Shelby. McGilberry's act was not done in self-defense or a result of a mind set of constant conflict as was found in *Day*.

¶21. The trial judge properly granted the State's motion in limine excluding reference to the altercation between McGilberry and Shelby two months before the shooting. The prior fight is not relevant because regardless of what occurred two months earlier, the deceased was not the aggressor the day he was shot. McGilberry came to the victim's place of business armed and looking for the victim. The prior fight is irrelevant because nothing that occurred two months before played into this incident. The record shows that McGilberry was not acting in self-defense or that his actions could be mitigated from the crime of murder to manslaughter.

## CONCLUSION

¶22. For the foregoing reasons, we affirm the judgment of the Jones County Circuit Court.

¶23. **CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**McRAE, P.J., SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., CONCURS WITH SEPARATE WRITTEN OPINION.**

**BANKS, PRESIDING JUSTICE, CONCURRING:**

¶24. I concur in the result reached by the majority. I write separately to note that my conclusion is compelled by the fact that this record contains no proof whatever to cast doubt upon the issue of who was the aggressor during this altercation. McGilberry did not testify. None of the witnesses indicated that the victim made any move which could reasonably be interpreted to be aggressive. In the absence of some evidence casting doubt on who was the aggressor or McGilberry's state of mind, evidence of the victim's character and prior acts of aggression toward McGilberry are irrelevant. Had there been such evidence, my conclusion would be different. I do not agree that the fact that prior altercations occurred two months prior to the one in question is dispositive. Had the evidence been different, the prior altercations might well be relevant to a determination of who was the aggressor, McGilberry's state of mind, or the reasonableness of his actions. *See, e.g., **Day v. State***, 589 So. 2d 637 (Miss. 1991).