919 So.2d 77 (2005)
William Roger McNEILL a/k/a Kimeson Eugene Meyer aka Beep, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01579-COA.
Court of Appeals of Mississippi.
May 24, 2005.
*79 Todd N. Thriffiley, Gulfport, attorney for appellant.
OFfice of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before BRIDGES, P.J., CHANDLER, and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. The petitioner was convicted of murder and sentenced to a term of life imprisonment. His motion for a judgment notwithstanding the verdict or, in the alternative, a new trial was denied. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. On July 5, 2000, Gwynette Spiers was found murdered in her home in Hancock County. She was discovered with her hands tied together, lying in a pool of blood caused by a laceration to her head. A police investigation ensued, and an autopsy later determined that the cause of death was strangulation. The coroner also determined that Spiers died at approximately 11:00 p.m. on July 4, 2000.
¶ 3. Based on interviews and recovered evidence, the police believed that an individual named William Roger McNeill, a.k.a. Beep, had been at the scene of the crime on the night of the murder. The police also learned that Spiers and McNeill had lived together off and on for a period of time prior to the murder. After interviewing Spiers's friends and family, it became apparent that she had been a narcotics user and dealer. Further investigation revealed that another individual, named Eric Jarvis, had also been at Spiers's home the night of the murder. The police interviewed *80 Jarvis, who admitted that he had been at Spiers's home and that he had seen someone in the house. At the time of his initial interview with the police, Jarvis was under indictment for a separate drug charge and he gave only a limited statement. Eleven months later, however, Jarvis again spoke with the police and this time he positively identified McNeill as the person he saw in Spiers's house the night she was murdered. Jarvis also gave the police details relating to the mechanics of his narcotics transactions: when Spiers needed narcotics for a sale, she would page Jarvis; Jarvis's code number was 07, Spiers's code number was 96, and McNeill's code number was 101. Jarvis showed the police a message he had received on his pager from Spiers's home phone at 10:02 p.m. the night of the murder. That message contained the code numbers 96 and 101 which indicated that Spiers needed narcotics from Jarvis to sell to McNeill that evening. Jarvis also told the police that he and his girlfriend, Catherine Johnson, had gone to Spiers's home on the night she was murdered in response to her pager message. Jarvis told the police that no one answered the door and that he found a note which stated that Spiers had gone to a friend's house. Jarvis told the police that while he was at Spiers's house, he saw McNeill inside the home, and that despite repeated requests by Jarvis, McNeill would not open the door.
¶ 4. Meanwhile, McNeill was being sought by the police in connection with the murder. He was seen at a friend's house several days after Spiers's body was discovered, and when police arrived to question him, he fled into a wooded area. McNeill was later apprehended through the use of a K-9 unit. When McNeill was arrested, the police discovered some female jewelry in his possession. Spiers's relatives later identified several items of jewelry as belonging to Spiers. The police requested and received a warrant to collect blood and hair samples from McNeill which were sent for DNA testing. DNA analysis of evidence recovered from the crime scene further implicated McNeill in the murder. Tissue from fingernail scrapings taken from Spiers's right hand revealed a match probability with McNeill of less than one in five trillion individuals; blood discovered on a pair of blue jeans at the crime scene revealed a match probability with McNeill of less than one in twenty-six million individuals; and blood discovered on the pantyhose used to bind Spiers's hands revealed a match probability with McNeill of less than one in seventy-three thousand individuals.
¶ 5. In May 2001, McNeill was indicted as a habitual offender[1] for the crime of murder, pursuant to Miss.Code Ann. § 97-3-19(1)(a) (Rev.2000). McNeill's trial was originally set for April 2002; however, it was eventually continued until February 2003. During that period, McNeill filed a number of motions, including three motions to request funds to secure expert assistance. The first two motions involved requests for funds to secure the assistance of an expert in DNA analysis. The third motion requested funds to secure the assistance of an expert in statistical genetics. The trial court granted McNeill's motions requesting an expert in DNA analysis, and McNeill secured the assistance of Ron Acton, Ph.D. However, the trial court denied McNeill's request for an expert in statistical genetics. In addition, McNeill filed a motion in limine to prohibit the State from offering testimony regarding probabilities *81 and/or statistics with regard to DNA evidence in the case. That motion was heard prior to voir dire and was subsequently denied. The trial proceeded and McNeill was convicted by a jury. He was later sentenced to a term of life imprisonment. McNeill filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the motion.
¶ 6. Aggrieved, McNeill now appeals asserting the following: (1) whether the trial court erred in its rulings regarding expert witnesses and expert testimony; and (2) whether the trial court erred in denying McNeill's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial because the verdict was against the overwhelming weight of the evidence.

ISSUES AND ANALYSIS

I. Whether the trial court erred in its rulings regarding expert witnesses and expert testimony.
¶ 7. McNeill asserts that the trial court erred in denying his motion in limine to prohibit or limit the testimony of the State's expert witness regarding statistics and probabilities relating to statistical genetics. McNeill also maintains that the trial court erred in denying his motion to secure funds for the assistance of an expert in the field of statistical genetics because McNeill had a substantial need for such an expert witness. See Hansen v. State, 592 So.2d 114 (Miss.1991). Specifically, McNeill contends that the trial court abused its discretion by allowing the State's expert witness to testify to conclusions in the form of probabilities and statistics based upon statistical genetics after denying McNeill's motion to secure funds to retain an expert in statistical genetics. McNeill maintains that the trial was fundamentally unfair because the use of an expert in the field of statistical genetics was necessary to rebut the conclusion offered by the State's expert witness. McNeill further argues that because the State did not produce all of the DNA evidence until ten days prior to trial, McNeill was severely prejudiced by his inability to adequately prepare for cross-examination, and he could not offer his own expert testimony regarding statistical genetics in rebuttal.
¶ 8. The State points out that McNeill was provided funds for an expert witness, and argues that it was not an abuse of discretion to allow evidence of DNA matching without requiring statistical analysis of the match. See Watts v. State, 733 So.2d 214 (Miss.1999). The State further argues that McNeill offers no evidence that his retained expert could not ably assist, or that the expert who was permitted to testify for the State was not qualified.
¶ 9. McNeill's argument mandates a discussion of both the standard of review for a trial court's refusal to provide funds for an expert witness, and the standard of review of a trial court's denial of a motion in limine. Each will be discussed in turn.

1. Expert Witness.

¶ 10. We begin by addressing the trial court's decision to deny McNeill's motion to secure an expert in the field of population genetics. A trial court's denial of a motion for funds to secure the assistance of an expert witness is reviewed for abuse of discretion. Hansen, 592 So.2d at 125. The trial court is only required to provide funds for an expert witness upon a showing of substantial need by the defendant. Id. "The accused is required to offer concrete reasons for requiring such assistance, not `undeveloped assertions that the requested assistance would be beneficial. . . .'" Id. (quoting Caldwell v. Mississippi, *82 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)).
¶ 11. Additionally, the Mississippi Supreme Court enumerated several factors to be considered in determining whether an indigent defendant's trial was unfair due to being denied an expert witness. These factors include: (1) the degree of access the defendant had to the State's expert witness; (2) whether the expert was available for rigorous cross-examination; and (3) lack of prejudice or incompetence on the part of the State's expert witness. Fisher v. City of Eupora, 587 So.2d 878, 883 (Miss.1991).
¶ 12. We note at the outset of our analysis that the record reflects that the trial court granted McNeill's motion to secure the assistance of an expert in DNA analysis, and the trial court allowed virtually an identical expenditure of funds by both the State and McNeill.[2] The State secured an expert witness who was qualified to discuss both the mechanics of DNA analysis and the statistical issues related to that analysis. McNeill maintains that he should have been allowed to retain multiple experts; however, he offers no argument as to his inability to secure an expert with a capability equivalent to that of the State's expert.
¶ 13. After applying the Fisher factors to the record, we find no support for McNeill's claim that he was prejudiced by the trial court's decision to deny his motion for an additional expert witness. Specifically, we conclude from the record that McNeill had equal access to the State's expert witness through the discovery process, and that McNeill had every opportunity to rigorously cross-examine the State's expert at trial. Although McNeill argues that the State's expert was prejudiced towards him from the outset because the expert was aware that McNeill was the suspect in this case even before he conducted the DNA analysis, we find this argument to be without merit. The record clearly reflects that the State's expert witness conducted the DNA analysis in a method consistent with reliable principles and methods. See M.R.E. 702. McNeill offers no detailed argument to the contrary. In the final analysis, McNeill's tactical decision to employ a specific expert witness was his to make, and he is solely responsible for the consequences of the choice he made. We are unable to conclude that the trial court abused its discretion, and we find this argument to be without merit.

2. Motion in Limine.

¶ 14. We turn now to address the trial court's decision to deny McNeill's motion in limine. McNeill argues that the trial court abused its discretion by allowing the State's expert to testify to conclusions in the form of probabilities and statistics based on statistical genetics. McNeill maintains that the trial court's erroneous decision to denying McNeill's motion in limine requires a reversal of McNeill's conviction.
¶ 15. We pause to consider when a motion in limine should be granted:
A motion in limine "should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning *83 the material will tend to prejudice the jury."
McGilberry v. State, 797 So.2d 940, 942(¶ 12) (Miss.2001) (quoting Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988)).
¶ 16. The Mississippi Supreme Court has ruled on this specific issue regarding the admissibility of statistical evidence in cases involving DNA analysis holding that "where the trial court finds that evidence of a DNA match is admissible as relevant, the court should also allow scientific statistical evidence which shows the frequency with which the match might occur in a given population." Baldwin v. State, 757 So.2d 227, 231(¶ 15) (Miss.2000). The Baldwin court, relying on M.R.E.C 702, specifically held that where the witness has been qualified as an expert in DNA analysis, the trial court is within its discretion to allow the expert to give his opinion of the population frequency profile. Baldwin, 757 So.2d at 233(¶ 20).
¶ 17. Baldwin addresses the first prong of the McGilberry test regarding motions in limine. The Baldwin court plainly held that evidence of this nature is admissible. As to the second prong of the McGilberry test, there is no question that the State's expert witness testimony was inculpatory. However, McNeill offers no substantive argument as to how that testimony prejudiced the jury. We find, therefore, based on Baldwin and M.R.E. 702, that the testimony offered by the State's expert witness was admissible. We conclude that the information was essential for the jury to understand the evidence and to determine a fact in issue, namely, whether McNeill murdered Spiers. We find that the jury was not prejudiced by the statistical testimony, and that the trial court did not abuse its discretion in denying McNeill's motion in limine.

II. Whether the trial court erred in denying McNeill's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial because the verdict was against the overwhelming weight of the evidence.
¶ 18. McNeill argues that the trial court erred in denying his motion for a judgment notwithstanding the verdict or, in the alternative, a new trial because the verdict defies logic and was based on obvious lies and the testimony of a biased expert witness. Specifically, McNeill maintains that Jarvis's testimony was so full of lies that it was not believable. McNeill claims that Jarvis fabricated the story that he saw McNeill in Spiers's house the night of the murder in order to take suspicion off of himself. Additionally, McNeill asserts that the State's expert witness on DNA analysis was biased since he was being paid by the State.
¶ 19. As previously mentioned, McNeill was indicted for murder pursuant to Miss. Code Ann. § 97-3-19(1)(a). Section 97-3-19(1)(a) defines murder as "[t]he killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being. . . ." Therefore, the State was required to prove beyond a reasonable doubt that McNeill unlawfully killed Spiers in Hancock County with deliberate design or intent.
¶ 20. The Mississippi Supreme Court has recently revisited the distinction between the respective standards of review regarding a motion for a judgment notwithstanding the verdict and a motion for a new trial. We will address each standard individually.

1. Sufficiency of the evidence.

¶ 21. A motion for a judgment notwithstanding the verdict challenges the legal *84 sufficiency of the evidence. The standard of review is as follows: the evidence is examined in the light most favorable to the State; all credible evidence found consistent with the defendant's guilt must be accepted as true; and, the prosecution is allowed the benefit of all sound and reasonable inferences which may be drawn from the evidence. Jones v. State, 669 So.2d 1383, 1388 (Miss.1995). This Court may only reverse a jury's conviction based on insufficient evidence where the evidence viewed in the light most favorable to the prosecution is such that a fair and reasonable jury could not find the defendant guilty. Id. To employ a "less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." Malone v. State, 486 So.2d 360, 366 (Miss.1986).

2. Weight of the evidence.

¶ 22. The Mississippi Supreme Court has recently clarified the standard of review regarding the denial of a motion for a new trial based on the verdict being against the overwhelming weight of the evidence. That standard is as follows: "[w]hen reviewing a denial of a motion for a new trial, based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836(¶ 18) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss. 1997)). "The evidence should be viewed in the light most favorable to the verdict." Id. The reviewing court sits as a limited "thirteenth juror" and weighs the evidence which was presented to the jury. Bush, 895 So.2d at 844(¶ 18). The reviewing court, however, must be mindful that "the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Bush, 95 So.2d at 844(¶ 18) (citing Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)).
¶ 23. With these standards of review in mind, this Court must consider whether the evidence offered by the State had the requisite weight and sufficiency to prove beyond a reasonable doubt that McNeill unlawfully killed Spiers in Hancock County with deliberate design or intent.
¶ 24. We begin our analysis with the undisputed issues of jurisdiction and cause of death. The record reflects undisputed testimony that the murder occurred in Hancock County. Furthermore, the coroner's undisputed testimony reflects that there was a deliberate design on the part of Spiers's attacker to effect her death, based on the nature of the injuries she received. The coroner testified that Spiers was hit in the back of the head with a pipe-shaped object which caused a deep laceration approximately three inches long, and that Spier was strangled to death.
¶ 25. The sole issue in dispute was the identity of the person who unlawfully, willfully, and feloniously killed Spiers. The record reflects that the State provided testimony from Jarvis and from the expert on DNA analysis to prove that McNeill committed the murder. Jarvis testified that he saw McNeill at the scene of the murder that night, and the State's expert witness provided the conclusions of the DNA testing; namely, the probabilities that McNeill was the murderer based on an analysis of the genetic material discovered at the crime scene. See ¶ 4. McNeill offered his own expert witness's testimony to contradict the conclusions of the State's expert. Additionally, McNeill argued that other individuals had a motive to murder Spiers, including Jarvis. McNeill was allowed the assistance of an expert witness to advance the theory of his case, and McNeill had *85 every opportunity to do so. Furthermore, each of the State's witnesses was subjected to the crucible of cross-examination.
¶ 26. After examining the evidence in the light most favorable to the State, and after accepting as true all credible evidence found consistent with the defendant's guilt, and after affording the prosecution the benefit of the sound and reasonable inferences which may be drawn from the evidence, we find that a fair and reasonable jury could conclude, based on the sufficiency of the evidence, that McNeill unlawfully murdered Spiers with deliberate design in Hancock County. We conclude that the State offered sufficient evidence as to each element of the murder charge against McNeill.
¶ 27. Furthermore, after viewing the evidence in the light most favorable to the verdict, and after weighing the evidence as a limited "thirteenth juror," we find that the evidence does not preponderate heavily against the verdict, and that the verdict does not sanction an unconscionable injustice. We agree that there were difficult issues of credibility for the jury to make, however, matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Schuck v. State, 865 So.2d 1111, 1123(¶ 34) (Miss. 2003). This Court's role as a limited "thirteenth juror" is restricted to considering whether the jury's resolution of the conflicting testimony amounted to an unconscionable injustice. In this case, after viewing the evidence in the light most favorable to the verdict, we are unable to conclude that the jury's decision to find McNeill guilty of murder was beyond the weight of the evidence.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, AND BARNES, JJ., CONCUR.
NOTES
[1] McNeill was indicted as a habitual offender pursuant to Miss.Code Ann. § 99-19-83 (Rev. 2000). The record reflects that he had three felony convictions prior to this indictment for murder.
[2] The record reflects that the trial court issued orders authorizing the payment of $4,160.40 for the expense of the State's only expert witness and $4,153.55 for the expense of McNeill's only expert witness; a difference of $6.85.