912 So.2d 165 (2005)
Tyrone JENKINS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01037-COA.
Court of Appeals of Mississippi.
October 4, 2005.
*168 Eugene A. Perrier, Vicksburg, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before BRIDGES, P.J., MYERS and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Tyrone Jenkins was convicted of murder and of possession of a firearm after a prior felony conviction. He admits to shooting the victim but claims self-defense. Tyrone's brother, Kevin Jenkins, who drove Tyrone to the area where the shooting occurred, was also indicted for murder as an accessory before the fact. Kevin was found not guilty. Tyrone appeals, raising the following issues:
I. WHETHER TYRONE'S RIGHTS TO A SPEEDY TRIAL WERE VIOLATED
II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO SEVER THE TRIALS OF TYRONE AND KEVIN JENKINS
III. WHETHER THE COURT ERRED IN FAILING TO CONDUCT SEPARATE TRIALS ON THE CHARGE OF MURDER AND THE CHARGE OF POSSESSION OF A FIREARM
IV. WHETHER THE TRIAL JUDGE PROPERLY EXCLUDED EVIDENCE OF THE VICTIM'S CHARACTER
V. WHETHER TYRONE RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL
VI. WHETHER THE CUMULATIVE EFFECT OF THE ERRORS REQUIRES A GRANTING OF A NEW TRIAL
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Tyrone Jenkins was in Vicksburg, Mississippi, on June 5, 2002, to help his mother move. His mother was temporarily living at another location because the Mississippi River was flooding. Tyrone was checking on the house to see if anyone had disturbed it. After checking on the house, he went around the block to Ford Road to a vacant lot with a picnic table to visit people in the neighborhood.
¶ 4. Soon after Tyrone arrived, he met Jimmy Davis. They talked for thirty to forty-five minutes, after which time Jimmy left. Tyrone went to a store to buy food and drinks. He returned to the lot, and while he was eating, Dean Johnson and John Walter Jones drove up. John Walter's son was also there. Dean asked for some of Tyrone's food and drink, and Tyrone gave it to him.
¶ 5. Dean asked John Walter and his son to move from their seats so that Dean could sit next to Tyrone. Dean then hit Tyrone with a brick on the side of the head. Tyrone hit the ground while Dean continued to hit him with a brick and accused Tyrone of stealing his girlfriend. Tyrone was on the ground, Dean was standing over him, and Dean placed a glass bottle over Tyrone's head and told *169 him if Tyrone ever said they were friends again that he would kill him.
¶ 6. Tyrone asked Dean why he had hit him with a brick, and Dean said it was because Tyrone said they were friends even though a year ago Tyrone was trying to date Dean's girlfriend while Dean was in jail. Dean continued to threaten Tyrone's life, but Dean left when he heard the police arrive. As he was leaving, Dean vowed to finish the incident.
¶ 7. After Dean left, Tyrone got into his truck and was driving away from the lot, when he was pulled over by a police officer. The officer took a statement from Tyrone about Dean's attack and took pictures of Tyrone's head injuries.
¶ 8. Tyrone then drove to Daisy Reed's house on Ford Road, where he thanked Reed's daughter for calling the police. Afterwards, he returned to his mother's house and armed himself with a gun because of Dean's threat to finish the incident.
¶ 9. Tyrone took a nap at his mother's house before going to the Food Maxx store, where by chance he saw his brother, Kevin Jenkins. Tyrone asked his brother to drive him back to his mother's house in his jeep. When they approached Ford Road, a red vehicle and pedestrians were blocking the road. Tyrone saw Dean in the crowd; as they made eye contact, Dean pulled out a gun.[1] Tyrone jumped from the jeep and fired his pistol at Dean. Dean fled, and Tyrone chased him.
¶ 10. They ran into Patricia Kinnard's yard, and Dean fell to the ground. Tyrone thought he had shot Dean in the leg, but Dean jumped to his feet and pointed his pistol at Tyrone. Tyrone shot at Dean twice, ultimately killing him. Tyrone admits to shooting Dean but claims self-defense.
¶ 11. Kevin remained in his jeep during the incident the whole time, and he told his brother to get out of the neighborhood. Tyrone immediately got into Kevin's jeep, and they left the scene. Kevin drove Tyrone to the Vicksburg Police Department. Tyrone told the police that Kevin had nothing to do with the incident. The police arrested both men for the murder of Dean Johnson, and they were subsequently indicted. Tyrone was also indicted for possession of a firearm by a prior convicted felon.
¶ 12. Tyrone and Kevin retained the services of an attorney who represented both of them. The attorney filed a motion to sever the trials of Kevin and Tyrone, but the motion was denied. Kevin retained his own lawyer one month before trial.
¶ 13. The jury convicted Tyrone of first degree murder and for possession of a firearm after a prior felony conviction. The jury found Kevin not guilty of murder.

ANALYSIS
I. WHETHER TYRONE'S RIGHTS TO A SPEEDY TRIAL WERE VIOLATED
¶ 14. The trial was originally scheduled for March 23, 2003. Tyrone's attorney filed a motion for a continuance, and the trial was ultimately commenced on June 9, 2003. Tyrone claims that his constitutional rights were violated because he was ready for trial on March 23, and that the continuance was not authorized by him nor was it in his best interest.
¶ 15. A balancing test is applied to determine whether a defendant's right to a speedy trial has been violated. Barker *170 v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). There are four factors which comprise this test: (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice resulting to the defendant. The Mississippi Supreme Court has stated, "The weighing of the Barker factors is not a mechanistic weighing. We must look at the totality of the circumstances." Herring v. State, 691 So.2d 948, 955 (Miss.1997). "When the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting the defendant's speedy trial claim." Perry v. State, 637 So.2d 871, 876 (Miss.1994).

Length of Delay
¶ 16. The length of delay "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S.Ct. 2182.
¶ 17. A defendant's right to a speedy trial begins at indictment, or when a defendant was arrested. "In short, the constitutional right to a speedy trial attaches when a person has been accused." Smith v. State, 550 So.2d 406, 408 (Miss. 1989) (citing Beavers v. State, 498 So.2d 788, 789-90 (Miss.1986) (overruled on other grounds); Bailey v. State, 463 So.2d 1059, 1062 (Miss.1985)). Tyrone was arrested on June 5, 2002. The trial, which lasted five days, was commenced on June 9, 2003. Consequently, Tyrone's trial was commenced approximately one year after the time his right to a speedy trial attached. "While there are some exceptions to the rule, `it may generally be said that "any delay of eight months or longer is `presumptively prejudicial.'" Id. (quoting 2 W. LeFave and J. Israel, Criminal Procedure § 18.2 (1984); Joseph, Speedy Trial Rights in Application, 48 Fordham L.Rev. 611, 623 n. 71 (1980)). A delay of a period of longer than eight months is not enough to establish that a speedy trial right has been violated, but it is enough to evaluate the other Barker factors. Id.

Reasons for the Delay
¶ 18. The shell casings and projectile from the shootings were sent to the crime lab for analysis. Tyrone's attorney received the reports from the crime labs on March 18 and 19, 2003, less than a week before the trial was originally scheduled to commence. Tyrone's attorney filed his motion for continuance because he needed time to review the evidence.
¶ 19. If the defendant caused the delay, he is not allowed to complain. Perry v. State, 419 So.2d 194, 199 (Miss. 1982). In addition, this Court will not address issues based on assertions in the briefs and must confine itself to what appears in the record. Medina v. State, 688 So.2d 727, 732 (Miss.1996). There is nothing in the record to suggest that Tyrone insisted on having his trial on March 23, 2003.

Defendant's Assertion of the Right
¶ 20. Tyrone never asserted his right to a speedy trial. While it is the State's duty to insure that the defendant receives a speedy trial, a defendant bears some responsibility to assert that right. Wiley v. State, 582 So.2d 1008, 1012 (Miss. 1991). A speedy trial claim will not be automatically rejected for failure to assert the right, but "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532, 92 S.Ct. 2182.

*171 Prejudice to the Defendant

¶ 21. Jenkins has not claimed any prejudice other than the fact that he was incarcerated an additional seventy-eight days from the time between his arrest and his trial. Incarceration alone is not sufficient prejudice to warrant reversal. Birkley v. State, 750 So.2d 1245, 1252 (¶ 27) (Miss. 1999) (citing Taylor v. State, 672 So.2d 1246, 1261 (Miss.1996)).

Conclusion
¶ 22. Based on the totality of the circumstances, this Court finds that Tyrone's speedy trial rights were not violated. Tyrone is unable to show that he refused to authorize his attorney's request for a continuance, he did not request the right to a speedy trial, and he has not demonstrated that he was prejudiced by the delay.

II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO SEVER THE TRIALS OF TYRONE AND KEVIN JENKINS
¶ 23. Tyrone's attorney filed a motion to sever the trials of Kevin and Tyrone. The circuit court judge denied this motion, finding that no evidence admissible against Tyrone would be inadmissible against Kevin, and further finding that neither Tyrone nor Kevin would exculpate himself at the expense of his brother.
¶ 24. The granting or refusing of severance in cases not involving the death penalty is within the discretion of the trial judge. Uniform Rule of Circuit and County Court 9.03. In determining whether a severance should be granted, one of two criteria must be met: (1) whether or not the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant, and (2) whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. Hawkins v. State, 538 So.2d 1204, 1207 (Miss.1989) (citing Duckworth v. State, 477 So.2d 935, 937 (Miss.1985)). Absent a showing of prejudice, there are no grounds to hold that the trial court abused his discretion. Id.
¶ 25. At trial, both Kevin and Tyrone testified; although their testimonies did not parallel each other in their entirety, neither brother blamed the other for the commission of the murder. Tyrone made it clear to the jury that Kevin had no involvement in the shooting whatsoever. Kevin testified that he heard two guns firing but that he did not see who was doing the shooting because he did not want to get shot. Kevin stated that he did see his brother with a gun, but that he had not talked with his brother about carrying a gun. Kevin did scream at Tyrone and told him to get into the jeep and leave the neighborhood, but he never said Tyrone was the aggressor in the shooting. Kevin proclaimed his own innocence as an aider and abettor, but he did not do so at Tyrone's expense. The testimonies of Kevin and Tyrone did not conflict to the extent that the trials should have been separate.

III. WHETHER THE COURT ERRED IN FAILING TO CONDUCT SEPARATE TRIALS ON THE CHARGE OF MURDER AND THE CHARGE OF POSSESSION OF A FIREARM
¶ 26. Tyrone's attorney did not demand severance of the charges presented in the indictment. Because the issue was not raised in the circuit court, Tyrone relies on plain error to raise this issue on appeal. Watts v. State, 733 So.2d 214, 233 (¶ 53) (Miss.1999). "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." Williams v. State, 794 So.2d 181, 187 (¶ 23) (Miss.2001).
*172 ¶ 27. In 1986, the Mississippi legislature enacted a statute authorizing multi-count indictments. Miss.Code Ann. § 99-7-2 (Rev.2000). The statute authorizes such indictments if (1) the offenses are based on the same act or transaction or (2) the offenses are based on two or more acts or transactions constituting parts of a common scheme or plan.
¶ 28. In determining whether a multi-count indictment warrants severance, a court "should consider the time period between offenses, whether evidence proving each offense would be admissible to prove the other counts, and whether the offenses are interwoven." Eakes v. State, 665 So.2d 852, 861 (Miss.1995). In the present case, the State proved its murder case by introducing witnesses who saw Tyrone possess a gun, threaten Dean Johnson, and shoot him. Proof that Tyrone possessed a gun was an essential component of the State's case. Therefore, Tyrone's two offenses were sufficiently interwoven to warrant a multi-count indictment.
¶ 29. Tyrone claims that the failure to give him a separate trial was prejudicial to him because the jury learned that he was a prior convicted felon. However, the circuit court judge took steps to minimize the prejudicial effects of such knowledge. Immediately after the jury was impaneled, but outside the jury's presence, the judge addressed the issue of allowing the State to prove the elements of possession of a weapon by a convicted felon. Tyrone's attorney offered to stipulate to the fact that Tyrone was a prior convicted felon so that the State would not be required to introduce a certified copy of Tyrone's former conviction. After Tyrone's attorney made this offer, the judge asked Tyrone whether it was his wish to concede to the jury that he was a convicted felon on June 5, 2002. Tyrone stated that he wished to concede this fact. The State presented no evidence at trial concerning Tyrone's prior felony conviction. The jury's sole knowledge of Tyrone's prior conviction was a jury instruction informing them that Tyrone was a prior convicted felon. This issue is without merit.

IV. WHETHER THE TRIAL JUDGE PROPERLY EXCLUDED EVIDENCE OF THE VICTIM'S CHARACTER
¶ 30. Tyrone's defense to his shooting of Dean Johnson was that he was justifiably afraid of Dean because he knew of Dean's reputation in the neighborhood for being a violent person who used firearms. Tyrone intended to introduce witnesses who knew about Dean's violent reputation, and who had knowledge of specific events of Dean's violence and gunplay. He submitted the names of the witnesses he wanted to call and a brief summary of what he expected each of them to testify on the stand. Before trial, the State filed a motion in limine to exclude mention of Dean's character until after Tyrone had established that he was acting in self-defense, which the circuit court judge granted.
¶ 31. During Tyrone's testimony, the judge ruled that Tyrone could testify that Dean had threatened him prior to the shooting. Tyrone could also testify as to his state of mind as to whether he believed Dean might carry out the threat to kill him. Tyrone was allowed to explain, by his own testimony, why he was afraid of Dean. He testified that he knew of Dean's propensity to carry a weapon and that Dean kept a pistol in his car. He was also allowed to testify that Dean pulled a gun on him and fired the gun four or five times. However, Tyrone was not allowed to testify as to other bad acts Dean committed on other people, nor was he allowed to present witnesses that would testify as to Dean's character.
*173 ¶ 32. Evidence of a victim's character is ordinarily irrelevant. When the character of a person is relevant, "proof may be made by testimony as to reputation or by testimony in the form of an opinion." McGilberry v. State, 797 So.2d 940, 941 (¶ 7) (Miss.2001). Character evidence does not become relevant until there is some evidence of an overt act perpetrated against the defendant by the victim. Id. at 941-42 (¶ 7). As always, evidence may be excluded if its probative value is substantially outweighed by its prejudicial value. M.R.E. 403.
¶ 33. At the close of Tyrone's testimony, the court reconsidered Tyrone's efforts to introduce witnesses who would testify as to Dean's propensity for violence. The judge denied the request because there were no witnesses to corroborate Tyrone's testimony that Dean was armed. One of the State's witnesses emphatically testified that Dean did not have a gun on the night Tyrone shot Dean. In addition, all of the physical evidence showed that there was only one gun being fired on the night of the shooting. Therefore, there was no question that Tyrone was the initial aggressor and was not acting in self-defense.

V. WHETHER TYRONE RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL
¶ 34. For a defendant to successfully prove ineffective assistance of counsel, the defendant must show that the counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 35. When a defendant raises an ineffective assistance of counsel claim on direct appeal, the question before this Court is whether the judge, as a matter of law, had a duty to declare a mistrial or order a new trial sua sponte, on the basis of trial counsel's performance. Colenburg v. State, 735 So.2d 1099, 1102 (¶ 8) (Miss.Ct. App.1999). The attorney's performance must be "so lacking in confidence that it becomes apparent or should be apparent that it is the duty of the trial judge to correct it so as to prevent a mockery of justice." Parham v. State, 229 So.2d 582, 583 (Miss.1969).
¶ 36. Tyrone claims that his attorney was ineffective for simultaneously representing his brother until a month before trial. Mississippi adheres to the law that joint representation is not a per se violation of the Sixth Amendment. Sykes v. State, 624 So.2d 500, 503 (Miss.1993). "[I]n order to demonstrate a violation of his Sixth Amendment Rights, a defendant must establish that an actual conflict of interest affected his lawyer's performance." Stringer v. State, 485 So.2d 274, 275 (Miss.1986) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). "[P]rejudice is presumed only if the defendant demonstrates that counsel `actively represented conflicting interests' and that `an actual conflict of interest adversely affected his lawyer's performance'" Smith v. State, 666 So.2d 810, 812-13 (Miss.1995) (quoting Cabello v. State, 524 So.2d 313, 316 (Miss. 1988)).
¶ 37. In the case sub judice, the fact that a single attorney represented both Tyrone and Kevin until one month before the trial does not establish actual prejudice.[2] Neither Kevin nor Tyrone attempted to exculpate himself at the expense of his brother, demonstrating that Kevin and Tyrone did not have conflicting interests. *174 Prior to trial, the attorney filed a motion for discovery, a motion to quash the indictment, a motion for continuance in order to assess the crime lab report, and a motion to sever Kevin and Tyrone as defendants. Tyrone does not assert that the filing of such motions were prejudicial to him, although he does speculate that his attorney somehow would have been more effective if these motions were filed solely on Tyrone's behalf. These speculative statements do not demonstrate actual prejudice.
¶ 38. At trial, Tyrone and Kevin each had their separate attorneys. The record shows that Tyrone received zealous representation from his attorney, who cross-examined the State's witnesses, asserted numerous objections to the State's introduction of evidence, gave opening and closing statements, called numerous witnesses on Tyrone's behalf, and attempted to introduce witnesses who could testify as to the victim's bad character. Tyrone testified and was able to articulate his theory of self-defense. His attorney successfully convinced the judge to allow Tyrone to testify about his state of mind on the evening of June 5, 2002, and his fear of Dean Johnson. Nothing in the record shows that Tyrone's attorney's performance was so deficient that the judge had a duty to declare a mistrial sua sponte.
¶ 39. Tyrone claims that he received ineffective assistance of counsel because his attorney filed a motion for continuance without Tyrone's knowledge or permission, failed to pursue Tyrone's right to a speedy trial, failed to respond to the State's motion in limine to exclude character evidence of the victim, failed to submit a limiting instruction to the jury regarding Tyrone's prior felony conviction, and failed to file a motion to sever his murder charge from his charge of possessing a firearm. Tyrone also claims that his attorney was ineffective for failing to argue Tyrone's motion for a JNOV or provide a memorandum after the motion was initially filed. Judicial review of an attorney's trial tactics must be highly deferential, and every effort should be made to eliminate the distorting effects of hindsight. Smiley v. State, 815 So.2d 1140, 1148 (¶ 32) (Miss. 2002). "The right to effective counsel does not entitle the defendant to have an attorney who makes no mistakes at trial. The defendant just has a right to have competent counsel." Bell v. State, 879 So.2d 423, 439 (¶ 50) (Miss.2004). Tyrone received effective assistance of counsel. This assignment of error is without merit.

VI. WHETHER THE CUMULATIVE EFFECT OF THE ERRORS REQUIRES A GRANTING OF A NEW TRIAL
¶ 40. Errors in the lower court that do not, by themselves, require reversal may nonetheless cumulatively require reversal and a new trial. Jenkins v. State, 607 So.2d 1171, 1183 (Miss.1992). Where there is no reversible error in any part, there is no reversible error in the whole. McFee v. State, 511 So.2d 130, 136 (Miss.1987). Finding no error in any of Tyrone's assertions, there is no cumulative error to review.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF COUNT I MURDER AND SENTENCE OF LIFE IMPRISONMENT, COUNT II POSSESSION OF A WEAPON AFTER A FELONY CONVICTION AND SENTENCE OF THREE YEARS, SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*175 KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The facts recited in paragraphs 10 and 11 are Tyrone's version of the events. No witness other than Tyrone testified that Dean had a gun.
[2] James Penley represented both Kevin and Tyrone until one month before trial. Kevin privately retained Eugene Perrier on May 13, 2003. Mr. Penley represented Tyrone's interests alone at trial. Mr. Perrier is representing Tyrone on appeal.