ISHEE, J.,
for the Court:
¶ 1. Stroud Construction, Inc. (Stroud) appeals the judgment of the Circuit Court of Madison County, which held that Bill and Cindy Walsh (collectively the Walshes) were not in breach of the contract they had entered into with Stroud to build their home. Finding no error, we affirm.
FACTS
¶ 2. In May 2000, the Walshes bought a lot in the Lake Caroline Subdivision in Madison, Mississippi. Shortly thereafter, the Walshes began to accept bids for the construction of a new home on the lot. Stroud submitted an initial offer of $950,458 to the Walshes. The Walshes rejected the offer because it exceeded the amount of money that they had budgeted for the construction of their new home. Subsequently, Stroud submitted a second offer of $752,145, which the Walshes accepted. The Walshes and Stroud executed a written construction contract. The contract required that Stroud build a luxury home for the Walshes on lot eight of the Lake Caroline Subdivision. Pursuant to the contract, the Walshes agreed to pay Stroud for the actual costs associated with the construction of the house as well as a builder’s fee of $52,000 and a cost fee of 1.25 percent.
¶ 3. The construction of the house began in June 2001. Pursuant to the terms of the contract, the house was to be completed within one year. In July 2001, Stroud was issued a building permit. The building permit reflected that the total value of all of Stroud’s work would be $525,000.
¶ 4. The Walshes moved into the house in August 2002. Before moving into the house, the Walshes complained to Stroud that the roof leaked. After moving in, the roof continued to leak. The Walshes sent a list of problems with the house, including the leaky roof, to Stroud. Stroud attempted numerous times to repair the leaky roof, but it continued.
¶ 5. According to the Walshes and their expert witness, Larry Sistrunk, a Mississippi licensed residential builder, Stroud constructed the Walshes home in a poor *993 manner. The Walshes and Sistrunk asserted that Stroud’s lack of workmanship, failure to supervise the subcontractors and the construction in a reasonable manner, failure to complete the project in a timely manner, failure to pay the subcontractors timely, and the exorbitant overcharges resulted in damages to the Walshes. It is undisputed in the record that the Walshes consistently paid Stroud’s invoices. The Walshes contend that it was only after Stroud exceeded their contract price and failed to repair the leaky roof that they refused to pay any additional money to Stroud. The Walshes assert that Stroud fraudulently lowered the bids from his subcontractors and then misrepresented to them that he could complete the project for $752,145.
¶ 6. At trial, the Walshes claimed that Stroud had overcharged them for some of the work performed by Stroud’s subcontractors. According to the record, Stroud spent nearly $86,444.80 on framing labor— nearly $60,000 over Stroud’s original contract price. Altogether, the Walshes paid more than $80,000 in excess of the contract price. Stroud’s delays in the construction of the house also caused the Walshes to accumulate an additional $28,174.54 in interest on the construction loan. Consequently, Stroud exceeded the agreed upon contract price for the Walshes’ house.
¶ 7. As a result, the Walshes refused to pay any additional money to Stroud. Stroud filed its complaint on December 3, 2003, seeking an additional $127,321.81 from the Walshes. The Walshes then filed a counterclaim asserting that Stroud was negligent and in breach of contract. Following a trial, the jury found in favor of the Walshes and awarded them $90,000 in damages. Stroud filed a notice of appeal with the circuit court. Stroud now appeals, asserting that:
I. The trial court erred in denying Stroud’s request for a directed verdict or, in the alternative, a peremptory instruction declaring the construction contract to be a cost-plus contract;
II. The trial court committed error in refusing Stroud’s motion in limine to require that the contract be referred to and characterized as a cost-plus contract and simultaneously preclude references that the Walshes attempted to mis-char-acterize the contract as something else; and
III. The jury verdict in favor of the Walshes is against the overwhelming weight of the evidence.
Finding no error, we affirm.
STANDARD OF REVIEW
¶ 8. The standard of review regarding the denial of a directed verdict and a peremptory instruction is de novo. White v. Stewman, 932 So.2d 27, 32 (¶ 10) (Miss.2006). The supreme court stated:
This Court will consider the evidence in the light most favorable to the appellee nonmovant, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant movant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.
*994 Id. A motion in limine “should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury.” McNeill v. State, 919 So.2d 77, 82-83 (¶ 15) (Miss.Ct.App.2005).
DISCUSSION
¶ 9. The central issue relating to all of Stroud’s assignments of error is whether the trial court should have ruled as a matter of law that the contract at issue was a cost-plus contract; therefore, the trial court should not have permitted the admission of parol evidence to explain the contract terms and the agreement of the parties.
¶ 10. “[I]t is firmly established that when the language of a contract is ambiguous parol evidence may be admitted to clarify the meaning of the ambiguity.” Lange v. City of Batesville, 972 So.2d 11, 18 (¶ 8) (Miss.Ct.App.2008). In the present case, the contract between Stroud and the Walshes was ambiguous because the contract terms and the agreement of the parties were not clearly defined. Nowhere in the contract was- the term “estimated price” or “cost-plus” defined. Also, Bill struck the portion of the contract that stated the entire and final agreement between the parties was contained in the written contract.
¶ 11. Stroud also argues several reasons why the contract was a cost-plus contract, namely:
(1) Stroud documented his file and invoices and provided detailed bills to the Walshes which was only necessary if the Walshes were paying the costs of the construction and the labor. In other words, if the total price were fixed or capped, the Walshes did not need monthly invoices with all the details as to the costs of the materials and labor; (2) Bill Walsh admitted at trial he knew they were responsible for paying construction costs, overhead, and a builder’s fee; and (3) Cindy Walsh testified that in the very beginning stages of construction she became concerned about the cost of framing exceeding the amount estimated by Stroud, and began to ask Stroud to provide time sheets for the framers. If [Cindy] thought she was not responsible for any amount over the estimate price in the contract, then the framing overages should have been of no concern to her.
¶ 12. Stroud contends that because the motion in limine was denied, the Walshes attempted to vaguely characterize the contract as a fixed-price contract, but they were never required to identify the fixed price, thereby confusing the jury as evidenced by its verdict.
¶ 13. The evidence that Stroud sought to exclude was relevant and admissible. The negotiations between the parties clearly reflect that both parties believed that the Walshes’ house would be completed for a total of $752,154. Stroud’s application for a building permit confirmed that he understood that his contribution to the project would cost $525,000. Consistent with his understanding of the contract, which incorporated their negotiated and agreed upon price to build, Bill struck out the portion of the contract which said that everything before then was incorporated into that one document. Thus, it is clear that Stroud understood that the negotiated price would include the items paid for directly by the Walshes. The trial court did not abuse its discretion in allowing this evidence to be considered; thus, this issue is without merit.
*995 ¶ 14. Stroud asserts that the jury verdict in favor of the Walshes is against the overwhelming weight of the evidence. Stroud contends that because it is undisputed that the Walshes did not pay the final invoices, the jury’s only choice was to find in favor of the Walshes; thus, Stroud contends that such a finding is against the overwhelming weight of the evidence.
¶ 15. “In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Lamartiniere v. Jones, 915 So.2d 1112, 1114 (¶ 8) (Miss.Ct.App.2005). Considering all the evidence, the trial court did not err in denying Stroud’s motion for a directed verdict or, alternatively, a peremptory instruction; therefore, this issue is -without merit.
¶ 16. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.